**REDACTED
VERSION**

No. 21-1484C
(Judge Somers)

_____

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

_____

WORKHORSE GROUP, INC.,
Plaintiff,

v.

THE UNITED STATES,
Defendant,

and

OSHKOSH DEFENSE, LLC,
Defendant-Intervenor.

_____

DEFENDANT'S MOTION TO DISMISS

_____

|  | BRIAN M. BOYNTON |
|  | Acting Assistant Attorney General |
|  |  |
|  | MARTIN F. HOCKEY, JR. |
|  | Acting Director |
|  |  |
|  | DOUGLAS K. MICKLE |
|  | Assistant Director |

OF COUNSEL:

MICHELLE A. WINDMUELLER
MICHAEL F. KIELY
ROBERT J. DIETZ
Attorneys
United States Postal Service

BORISLAV KUSHNIR
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone:  (202) 307-5928
Facsimile:  (202) 353-0461
Email: Steven.Kushnir@usdoj.gov

July 6, 2021

Attorneys for Defendant

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

QUESTIONS PRESENTED................................................................................................. 2

STATEMENT OF THE CASE............................................................................................. 3

      I.      Rules And Regulations Governing Postal Service Procurements........................... 3

      II.     The NGDV Procurement And Workhorse's Disagreement................................... 6

      III.    Procedural History ................................................................................................. 7

ARGUMENT ....................................................................................................................... 8

      I.      Standard Of Review............................................................................................... 8

      II.     It Is Undisputed That Workhorse Failed To Exhaust Applicable
              Administrative Remedies....................................................................................... 9

      III.    The Postal Service's Exhaustion Requirement Is Mandatory, And
              Workhorse's Failure To Exhaust Must Therefore Result In Dismissal ............... 10

      IV.    Even If The Court Concludes That The Postal Service's Exhaustion
              Requirement Is Prudential, It Should Still Dismiss The Case ............................. 14

CONCLUSION....................................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Bankers Tr. New York Corp. v. United States,*
    225 F.3d 1368 (Fed. Cir. 2000) ................................................................. 13

*Banknote Corp. of Am. v. United States,*
    365 F.3d 1345 (Fed. Cir. 2004) ................................................................... 3

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................................... 8

*Columbus Reg'l Hosp. v. United States,*
    990 F.3d 1330 (Fed. Cir. 2021) ................................................................. 14

*Corus Staal BV v. United States,*
    502 F.3d 1370 (Fed. Cir. 2007) ................................................................. 12

*Impresa Construzioni Geom. Domenico Garufi v. United States,*
    238 F.3d 1324 (Fed. Cir. 2001) ................................................................. 15

*E.W. Bliss Co. v. United States,*
    77 F.3d 445 (Fed. Cir. 1996) ..................................................................... 15

*Emery Worldwide Airlines, Inc. v. United States,*
    264 F.3d 1071 (Fed. Cir. 2001) ................................................................... 4

*Fairholme Funds, Inc. v. United States,*
    114 Fed. Cl. 718 (2014) ............................................................................... 8

*Fla. Home Med. Supply, Inc. v. United States,*
    131 Fed. Cl. 170 (2017) ....................................................................... 13, 14

*Franchise Tax Bd. of Cal. v. U.S. Postal Serv.,*
    467 U.S. 512 (1984) ..................................................................................... 3

*Kam-Almaz v. United States,*
    682 F.3d 1364 (Fed. Cir. 2012) ................................................................... 8

*K-Tech Telecomm., Inc. v. Time Warner Cable, Inc.,*
    714 F.3d 1277 (Fed. Cir. 2013) ................................................................... 8

*Martinez v. United States,*
    333 F.3d 1295 (Fed. Cir. 2003) ................................................................. 11

*McCarthy v. Madigan*,
    503 U.S. 140 (1992) .................................................................................. 14, 15, 16

*McKart v. United States*,
    395 U.S. 185 (1969) .................................................................................. 10

*Myers v. Bethlehem Shipbuilding Corp.*,
    303 U.S. 41 (1938) .................................................................................... 10

*Neely v. United States*,
    285 F.2d 438 (Ct. Cl. 1961) ...................................................................... 13

*Palladian Partners, Inc. v. United States*,
    783 F.3d 1243 (Fed. Cir. 2015) ......................................................... *passim*

*Palmer v. United States*,
    168 F.3d 1310 (Fed. Cir. 1999) .................................................................. 8

*Rollock Co. v. United States*,
    115 Fed. Cl. 317 (2014) ............................................................................ 14

*Ross v. Blake*,
    136 S. Ct. 1850 (2016) .............................................................................. 10

*Sandvik Steel Co. v. United States*,
    164 F.3d 596 (Fed. Cir. 1998) ............................................................ 10, 13

*Sebelius v. Auburn Reg'l Med. Ctr.*,
    568 U.S. 145 (2013) .................................................................................. 12

*United States v. Abilene & S. Ry. Co.*,
    265 U.S. 274 (1924) .................................................................................. 13

*United States v. L.A. Tucker Truck Lines, Inc.*,
    344 U.S. 33 (1952) .................................................................................... 10

*Weinberger v. Salfi*,
    422 U.S. 749 (1975) .................................................................................. 11

*XTRA Lease, Inc. v. United States*,
    50 Fed. Cl. 612 (2001) ................................................................................ 3

**Statutes**

39 U.S.C. § 201 ..................................................................................................... 3

39 U.S.C. § 401 ................................................................................................. 4, 11

39 U.S.C. § 410 ................................................................................................. 3, 15

39 U.S.C. § 2008 .............................................................................................. 3, 15

Postal Reorganization Act of 1970,
 Pub. L. No. 91-375, 84 Stat. 719 ...................................................................... 3

**Regulations**

13 C.F.R. § 121.1102 ....................................................................................... 11, 14

39 C.F.R. § 601.103 ............................................................................................... 4

39 C.F.R. § 601.107 .......................................................................................... *passim*

39 C.F.R. § 601.108 .......................................................................................... *passim*

39 C.F.R. § 601.113 ............................................................................................... 4

**Administrative Materials**

Purchasing of Property and Services,
 72 Fed. Reg. 58,251-01 (Oct. 15, 2007) .............................................................. 4

Purchasing of Property and Services,
 75 Fed. Reg. 1,541-01 (Jan. 12, 2010) ................................................................ 4

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### BID PROTEST

| | | |
|---|---|---|
| WORKHORSE GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 21-1484C |
| THE UNITED STATES, | ) | |
| | ) | (Judge Somers) |
| Defendant, | ) | |
| | ) | ██████████ |
| and | ) | |
| | ) | |
| OSHKOSH DEFENSE, LLC, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |
| | ) | |

## <u>DEFENDANT'S MOTION TO DISMISS</u>

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), as well as the Court's June 17, 2021 scheduling order (ECF No. 15), defendant, the United States, respectfully requests that the Court dismiss the complaint for failure to exhaust administrative remedies.

## <u>INTRODUCTION</u>

On February 23, 2021, the United States Postal Service (Postal Service) awarded a contract for producing the next generation of mail delivery vehicles to defendant-intervenor Oshkosh Defense, LLC (Oshkosh). An unsuccessful offeror for that same contract, plaintiff Workhorse Group, Inc. (Workhorse), disagrees with the Postal Service's decision. But Workhorse filed this action without fully exhausting the administrative remedies established by the Postal Service. An applicable Postal Service regulation states that judicial review is not available under these circumstances. *See* 39 C.F.R. § 601.108(h). This motion presents two

██████████████████████████████

related questions:  Can the Court dispense with the exhaustion requirement in the Postal Service's regulations?  And if it can, should it do so here?

The first question should begin and end with the Federal Circuit's binding decision in *Palladian Partners, Inc. v. United States*, 783 F.3d 1243 (Fed. Cir. 2015).  There, the Court unambiguously held that "[w]here a regulation requires exhaustion, a party's failure to exhaust administrative remedies precludes judicial review of its claim." *Id.* at 1255.  Workhorse has indisputably failed to exhaust administrative remedies required by applicable Postal Service regulations.  As a result, the Court must dismiss this case.

The second question, to the extent it remains relevant after the Court resolves the first, should likewise lead to dismissal.  The Supreme Court has identified a limited set of circumstances in which trial courts may excuse a party's failure to exhaust some types of administrative remedies.  But none of these circumstances are found here.  To the contrary, requiring Workhorse to strictly comply with the Postal Service's exhaustion requirement would promote judicial efficiency and protect the Postal Service's unique authority over procurements.  Even if the Court has the discretion to excuse Workhorse's non-compliance, it would be imprudent to exercise that discretion in this case.  The Court should accordingly dismiss the complaint.

## QUESTIONS PRESENTED

1.      Whether the complaint must be dismissed because Workhorse failed to exhaust mandatory administrative remedies.

2.      Alternatively, if the administrative remedies at issue are prudential (rather than mandatory), whether well-established exhaustion principles counsel in favor of dismissal.

2

## STATEMENT OF THE CASE

### I.    Rules And Regulations Governing Postal Service Procurements

Congress established the Postal Service in 1970 to "provide postal services to bind the Nation together through the personal, educational, literary, and business correspondence of the people."  Postal Reorganization Act of 1970, Pub. L. No. 91-375, 84 Stat. 719 (codified at 39 U.S.C. § 101(a)).  Congress designated the Postal Service as "an independent establishment of the executive branch of the Government of the United States."  39 U.S.C. § 201.  This label symbolizes a legislative desire to have the Postal Service "run more like a business" than the predecessor Post Office Department.  *Franchise Tax Bd. of Cal. v. U.S. Postal Serv.*, 467 U.S. 512, 520 (1984).

Congress passed several statutory provisions to ensure the Postal Service's independence in the procurement arena.  It authorized the Postal Service to "make such expenditures and to enter into such contracts, agreements, and arrangements, upon such terms and conditions and in such manner as it deems necessary."  39 U.S.C. § 2008(c).  And, other than a few enumerated exceptions not relevant to this protest, Congress provided that "no Federal law dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds, . . . shall apply to the exercise of the powers of the Postal Service."  39 U.S.C. § 410(a).  As a result, procurement rules of general applicability, such as those found in the Federal Acquisition Regulation, do not govern Postal Service procurements.  *See Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1349 n.1 (Fed. Cir. 2004); *XTRA Lease, Inc. v. United States*, 50 Fed. Cl. 612, 624 n.25 (2001).[1]

---

[1] We do not suggest, however, that 39 U.S.C. § 410(a) entirely abrogates this Court's authority to review bid protests involving the Postal Service.  As the Federal Circuit explained

3

Congress also authorized the Postal Service to "adopt, amend, and repeal such rules and regulations, not inconsistent with this title, as may be necessary in the execution of its functions . . ." 39 U.S.C. § 401(2).  Pursuant to this authority, the Postal Service promulgated comprehensive purchasing regulations in 2007, *see* Purchasing of Property and Services, 72 Fed. Reg. 58,251-01 (Oct. 15, 2007), which it then revised in 2010, *see* Purchasing of Property and Services, 75 Fed. Reg. 1,541-01 (Jan. 12, 2010).  These regulations apply broadly to "all Postal Service acquisition of property (except real property) and services."  39 C.F.R. § 601.103.

The Postal Service's purchasing regulations establish a mandatory, two-step administrative process for resolving disagreements between the Postal Service and actual or prospective offerors.  The regulations define "disagreements" as "[a]ll disputes, protests, claims, disagreements, or demands of whatsoever nature arising in connection with the acquisition of property and services within the scope of § 601.103 of this chapter . . ." 39 C.F.R. § 601.107(a)(2).  In the first step, the regulations provide that "[a]ll disagreements must be lodged with the responsible contracting office in writing via facsimile, e-mail, hand delivery, or U.S. Mail." *Id.* at § 601.107(b).  Disagreements concerning the award of a contract (*i.e.* post-award disagreements) "shall be lodged within 10 days of the date the supplier received notification of award or 10 days from the date the supplier received a debriefing, whichever is later." *Id.*  Once the contracting officer receives a disagreement, she has ten days to resolve it and communicate her resolution to the supplier.  *Id.*[2]

---

long ago, "the Court of Federal Claims has jurisdiction over all government procurement protest cases, including those involving the USPS."  *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1083 (Fed. Cir. 2001).

[2] The term "supplier" refers to any person or legal entity that either submits an offer for, or is awarded, a Postal Service contract.  39 C.F.R. § 601.113(b)(7).

4

If the disagreement is not resolved within ten days, or if the supplier is unsatisfied with the contracting officer's resolution, the supplier must move to step two of the administrative process.  *See* 39 C.F.R. § 601.108(a).  Step two, which exists, in part, to expedite resolutions and reduce litigation costs, is "the sole and exclusive means to resolve disagreements under § 601.107 . . ."  *Id.* at § 601.108(b).  In this step, the aggrieved supplier must lodge a second disagreement with the Supplier Disagreement Resolution Official (SDR Official).  *Id.* at § 601.108(c).[3]  If a contracting officer previously resolved the supplier's disagreement, then a disagreement with the SDR Official must be lodged "within 10 days after the supplier first receives notification of the contracting officer's resolution."  *Id.* at § 601.108(d)(3).  The SDR Official must then establish a timeframe for resolving the disagreement, and "promptly" gather all necessary information and issue a written decision.  *Id.* at § 601.108(e).  The default timeframe for resolution by the SDR Official is 30 days.  *Id.* at § 601.108(i).  The SDR Official has broad authority under the Postal Service's purchasing regulations, as he may "direct" the Postal Service to re-evaluate the award, re-compete the requirement, and even terminate the award and issue a new solicitation.  *Id.* at § 601.108(g).  The SDR Official's resolution, which the contracting officer must then "implement promptly," "will be final and binding [on the Postal Service]."  *Id.*

Notably, the purchasing regulations make clear that this two-step administrative process must be fully exhausted before a protestor can seek judicial review.  "The Postal Service's final contract award . . . may be appealed to a Federal court with jurisdiction . . ."  39 C.F.R. § 601.108(h).  But, "[t]he party lodging the disagreement may seek review of the Postal

---

[3] The term "SDR Official" is defined in 39 C.F.R. § 601.107(a)(5).

Service's final contract award *only after the mandatory administrative remedies provided under § 601.107 and § 601.108 have been exhausted.*"  *Id.* (emphasis added).

II.      **The NGDV Procurement And Workhorse's Disagreement**

The Postal Service operates a fleet of over 200,000 mail-delivery vehicles throughout the United States and its territories.  *See* Compl. at ¶ 17, ECF No. 1.  The vast majority of those vehicles are approaching the end of their useful life.  *See id.*  In preparation for their retirement, the Postal Service sought to procure a new generation of mail-delivery vehicles.  *See id.*  The Postal Service undertook this effort through the Next Generation Delivery Vehicle (NGDV) Program.  *See. Id.*

In October 2015, the Postal Service issued a solicitation for the design, development, and manufacture of NGDV prototypes.  *See* Compl. at ¶ 19, ECF No. 1.  Six prototype suppliers – including Oshkosh and Workhorse's former partner, VT Hackney, Inc. – were selected.  *See id.* The suppliers then designed, manufactured, and delivered NGDV prototypes to the Postal Service for testing.  *See id.* at ¶ 20.  The Postal Service extensively tested various aspects of these prototypes, including their durability, handling, ergonomics, and fuel efficiency.  *See id.* Suppliers were given multiple opportunities to address flaws discovered during testing.  *See id.* at ¶ 22.

In December 2019, the Postal Service issued a solicitation for an Indefinite-Delivery, Indefinite-Quantity (IDIQ) Fixed Price with Economic Price Adjustment contract for the production of NGDVs.  *See* Compl. at ¶¶ 24-25, ECF No. 1.  According to the solicitation, the Postal Service sought to procure a minimum of 50,000 and a maximum of 165,000 vehicles.  *See id.* at ¶ 25.  The Postal Service committed to selecting the awardee based on the "best value to the Postal Service," after weighing such factors as technical evaluation results, total cost of

ownership, and risk.  *See id.* at ¶ 27.  Three suppliers – including Oshkosh and Workhorse – submitted timely proposals.  *See, e.g., id.* at ¶ 52.  The Postal Service reviewed all proposals and, in late 2020, conducted written and oral discussions with all offerors.  *See id.* at ¶¶ 62-65.

On February 23, 2021, the Postal Service notified all offerors that it had decided to award the NGDV contract to Oshkosh.  *See* Compl. at ¶ 66, ECF No. 1.  This decision was based on a determination that Oshkosh's proposal "offered the best value to the Postal Service."  *Id.* at ¶ 70. Workhorse requested a debriefing of the award decision, which was held on March 3, 2021.  *See id.* at ¶ 74.  On March 12, 2021, Workhorse lodged a disagreement with the contracting officer pursuant to 39 C.F.R. § 601.107.  *See id.* at ¶ 75.  Ten days later, on March 22, 2021, the contracting officer issued a detailed response letter denying Workhorse's disagreement.  *See id.* at ¶ 76.  Workhorse never lodged a disagreement with the SDR Official, as required by 39 C.F.R. § 601.108.  *See generally id.* at ¶ 90.

### III.    Procedural History

On June 16, 2021, almost three months after receiving the contracting officer's response to its disagreement, Workhorse filed the instant protest.  During a telephonic conference held the following day, the Court permitted the Government to brief one threshold issue before addressing the merits of Workhorse's allegations:  should the complaint be dismissed because Workhorse failed to exhaust applicable administrative remedies?  *See* Scheduling Order, ECF No. 15.  For the reasons that follow, the Court should answer that question affirmatively, and dismiss the case.

# ARGUMENT

## I.   Standard Of Review

A challenge to this Court's "general power to adjudicate in specific areas of substantive law" is "properly raised by a [Rule] 12(b)(1) motion." *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1).  In considering a motion to dismiss for lack of jurisdiction, the Court "usually assumes [that] all factual allegations in the complaint are true and draws all reasonable inferences in the plaintiffs' favor." *Fairholme Funds, Inc. v. United States*, 114 Fed. Cl. 718, 720 (2014).  "However, a plaintiff cannot rely solely upon allegations in the complaint if the defendant or the court questions jurisdiction.  Instead, the plaintiff must bring forth relevant, adequate proof to establish jurisdiction." *Id.*

In reviewing a motion to dismiss pursuant to RCFC 12(b)(6), the Court must accept plaintiff's allegations as true and construe them in the light most favorable to plaintiff. *K-Tech Telecomm., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013).  But legal conclusions and conclusory statements are "not entitled to the presumption of truth." *Id.*  "To avoid dismissal for failure to state a claim under RCFC 12(b)(6), a complaint must allege facts plausibly suggesting (not merely consistent with) a showing of entitlement to relief." *Kam-Almaz v. United States*, 682 F.3d 1364, 1367 (Fed. Cir. 2012).  In other words, "[t]he facts as alleged must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1367-68 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## II.      It Is Undisputed That Workhorse Failed To Exhaust Applicable Administrative Remedies

As explained above, the Postal Service's purchasing regulations establish a mandatory, two-step administrative process for resolving disagreements between the Postal Service and actual or prospective offerors.  In step one, aggrieved suppliers must lodge any post-award disagreement with the contracting officer within ten days of the award notification or debriefing, whichever is later.  39 C.F.R. § 601.107(b).  In step two, aggrieved suppliers who remain dissatisfied with the contracting officer's resolution of their disagreement must lodge a disagreement with the SDR Official within ten days of the contracting officer's resolution.  *Id.* at §§ 601.108(a), (c)-(d).  This second step of the administrative process is paramount, as the purchasing regulations make clear that lodging a disagreement with the SDR Official is "the sole and exclusive means to resolve disagreements under § 601.107."  *Id.* at § 601.108(b).  And, as the purchasing regulations also make clear, judicial review is only available after both steps of the administrative process – the one described in § 601.107 *and* the one described in § 601.108 – have been exhausted.  *Id.* at § 601.108(h).

Workhorse followed step one of the Postal Service's administrative process without an issue.  On March 12, 2021, nine days after debriefing, it lodged a timely disagreement with the contracting officer pursuant to 39 C.F.R. § 601.107.  *See* Compl. at ¶¶ 74-75, ECF No. 1.  The contracting officer timely resolved that disagreement ten days later, on March 22, 2021.  *See id.* at ¶ 76.  But despite its continued dissatisfaction with the contracting officer's resolution, *see id.* at ¶¶ 77-89, Workhorse made no attempt to proceed to step two of the administrative process.  Workhorse never lodged a disagreement with the SDR Official, as required by 39 C.F.R.

§ 601.108. Instead, "[f]ollowing [the contracting officer's] denial of Workhorse's disagreement, Workhorse initiated the instant protest." Compl. at ¶ 90, ECF No. 1.

It is thus undisputed that Workhorse failed to exhaust the administrative remedies prescribed by the Postal Service's purchasing regulations. The only question that remains is what consequences, if any, should flow from this undisputed failure.

### III.    The Postal Service's Exhaustion Requirement Is Mandatory, And Workhorse's Failure To Exhaust Must Therefore Result In Dismissal

"[N]o one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *McKart v. United States*, 395 U.S. 185, 193 (1969) (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938)). This longstanding principle stems from the notion that, generally, "courts should not topple over administrative decisions unless the administrative body not only has erred but has erred *against objection made at the time appropriate under its practice*." *Palladian Partners*, 783 F.3d at 1254 (quoting, *inter alia*, *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952)) (emphasis in original). As a result, "[w]hen administrative remedies have not been exhausted, judicial review of administrative action is inappropriate." *Sandvik Steel Co. v. United States*, 164 F.3d 596, 599 (Fed. Cir. 1998) (internal quotations omitted).

The United States Supreme Court recently distinguished between two types of exhaustion. In one corner stand "judge-made exhaustion doctrines," which, "even if flatly stated at first, remain amenable to judge-made exceptions." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). In the other corner, the Court found "statutory exhaustion provision[s]," which "foreclos[e] judicial discretion" because "courts have a role in creating exceptions only if Congress wants them to." *Id.* This distinction – between mandatory exhaustion requirements on

the one hand, and discretionary (or prudential) exhaustion requirements on the other – is the prism through which the Court should view this motion.  *See also Weinberger v. Salfi*, 422 U.S. 749, 766 (1975) (noting that an exhaustion requirement that appears in a statute is "something more than simply a codification of the judicially developed doctrine of exhaustion, and may not be dispensed with merely by a judicial conclusion of futility."); *Martinez v. United States*, 333 F.3d 1295, 1304 (Fed. Cir. 2003) (distinguishing between "mandatory" and "permissive" administrative remedies for the purpose of determining a claim's accrual date).

The exhaustion requirement at issue here, however, does not fit neatly into either of the categories identified in *Ross*.  The Postal Service's purchasing regulations are neither statutory nor judge-made; they are instead the product of notice and comment rulemaking, promulgated pursuant to express statutory authority.  *See* 39 U.S.C. § 401(2).  We are unaware of Supreme Court precedent directly addressing whether regulatory exhaustion requirements, such as the one found in 39 C.F.R. § 601.108(h), count as mandatory or prudential.  But while the Supreme Court has not had occasion to address this precise issue, the United States Court of Appeals for the Federal Circuit has.

In *Palladian Partners*, a protestor challenged the North American Industry Classification System (NAICS) code assigned to a particular solicitation.  783 F.3d at 1250.  The protestor raised its challenge in a suit filed with this Court, without first exhausting the administrative remedies prescribed by the Small Business Administration's (SBA) regulations.  *Id.*  The SBA's regulations state, in relevant part, that administrative remedies "must be exhausted before judicial review of a NAICS code designation may be sought in a court."  *Id.* at 1247 (quoting 13 C.F.R. § 121.1102.).  The Court held, plainly and unambiguously, that "[w]here a regulation requires exhaustion, a party's failure to exhaust administrative remedies precludes judicial

11

review of its claim." *Id.* at 1255.  The Court emphasized the SBA's statutory authority to promulgate regulations – including the regulation imposing an exhaustion requirement – and explained that such authority precludes courts from "undermin[ing] the regime established [by the SBA] unless the regulation is arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 1258 (quoting *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 157 (2013)) (cleaned up). Thus, the Court concluded, the "SBA's regulations require an interested party to [exhaust administrative remedies], or be precluded from filing suit." *Id.*

Relying on *McKart*, the protestor in *Palladian Partners* then argued that the trial court had the discretion to excuse a failure to exhaust administrative remedies, as though the SBA's regulatory exhaustion requirement was prudential, rather than mandatory.  *See* 783 F.3d at 1258. The Federal Circuit rejected that argument.  The Court acknowledged that "there are circumstances under which *some* types of exhaustion could be waived." *Id.* at 1259 (emphasis added).  But, the Court explained, "unlike SBA's regulations which require exhaustion, there was no statute or regulation requiring McKart to exhaust his administrative remedies before asserting wrongful classification." *Id.*  In other words, while the prudential exhaustion requirement in *McKart* was amenable to the trial court's discretion, the mandatory exhaustion requirement in *Palladian Partners* was not.  The Court ultimately reversed the trial court's denial of the Government's motion to dismiss, and remanded the case with instructions to dismiss for failure to exhaust administrative remedies.  *Id.* at 1261-62.

The Court's decision in *Palladian Partners* is consistent with prior Federal Circuit precedent.  In *Corus Staal BV v. United States*, 502 F.3d 1370 (Fed. Cir. 2007), the Court held that an exhaustion requirement found in a Department of Commerce regulation is "not simply a creature of court decision, as is sometimes the case, but is a requirement explicitly imposed by

12

the agency as a prerequisite to judicial review." *Id.* at 1379.  In *Sandvik Steel*, the Court held that another Department of Commerce regulation "constitute[s] precisely the kind of administrative remedy that *must* be exhausted before a party may litigate the validity of the administrative action."  164 F.3d at 599-600 (emphasis added).  Even 60 years ago, the United States Court of Claims explained that "the extent to which a plaintiff is required to pursue his administrative remedy is a matter for the discretion of the court," unless, of course, such administrative remedy is "made a prerequisite to suit by statute, binding regulation[,] or contract."  *Neely v. United States*, 285 F.2d 438, 443 (Ct. Cl. 1961) (citing *United States v. Abilene & S. Ry. Co.*, 265 U.S. 274, 279 (1924)).[4]  These decisions demonstrate that, unlike their judge-made counterparts, exhaustion requirements that appear in properly promulgated regulations are just as mandatory as exhaustion requirements enacted by Congress.  *See also Fla. Home Med. Supply, Inc. v. United States*, 131 Fed. Cl. 170, 179 (2017) ("Mandatory exhaustion may be found in either a statute or an agency regulation.").

There is no daylight between the SBA's mandatory exhaustion requirement in *Palladian Partners*, and the Postal Service's mandatory exhaustion requirement here.  In both cases, properly promulgated agency regulations unambiguously require the exhaustion of administrative remedies before judicial review becomes available.  And just as the protestor in *Palladian Partners* was "precluded from filing suit" due to its failure to exhaust mandatory

---

[4] "Court of Claims cases, until overturned by [the Federal Circuit] *en banc*, are binding precedent."  *Bankers Tr. New York Corp. v. United States*, 225 F.3d 1368, 1373 (Fed. Cir. 2000).

administrative remedies, 783 F.3d at 1258, Workhorse should be precluded from suing the Postal

Service here.[5]

## IV.    Even If The Court Concludes That The Postal Service's Exhaustion Requirement Is Prudential, It Should Still Dismiss The Case

In response, Workhorse may argue that the exhaustion requirement in 39 C.F.R.

§ 601.108(h) is prudential, rather than mandatory.  For the reasons outlines above, we believe

that such an argument is inconsistent with binding Federal Circuit precedent.  But even if the

Court agrees with Workhorse, the complaint in this case should be dismissed just the same.

The Supreme Court has explained that prudential exhaustion "serves the twin purposes of

protecting administrative agency authority and promoting judicial efficiency."  *McCarthy v.*

*Madigan*, 503 U.S. 140, 145 (1992).  The first purpose is based on "the notion, grounded in

deference to Congress' delegation of authority to coordinate branches of Government, that

agencies, not the courts, ought to have primary responsibility for the programs that Congress has

charged them to administer."  *Id.*  As a result, "[e]xhaustion concerns apply with particular force

when the action under review involves exercise of the agency's discretionary power . . ."  *Id.*

---

[5] We bring this motion under both RCFC 12(b)(1) and 12(b)(6) because it remains unclear which rule applies to non-statutory exhaustion requirements.  In one recent case, for example, this Court held that mandatory exhaustion requirements set out by regulation are jurisdictional in nature, and that a failure to exhaust ought to result in dismissal pursuant to RCFC 12(b)(1).  *See Fla. Home Med. Supply*, 131 Fed. Cl. at 179-80 ("In *Palladian Partners*, the Federal Circuit reviewed [SBA] regulation 13 C.F.R. § 121.1102 and found that it included a jurisdictional exhaustion requirement.").  In another case, the Court explained that only statutory exhaustion requirements may be viewed as jurisdictional.  *See Rollock Co. v. United States*, 115 Fed. Cl. 317, 329 (2014).  But this is ultimately a distinction without a difference.  Failure to exhaust administrative remedies is a threshold issue that should lead to the dismissal of a plaintiff's case at the outset, without reaching the merits of the claim.  Which particular rule leads to this result is immaterial.  *See, e.g., Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1341-42 (Fed. Cir. 2021) (holding that the trial court erred in applying RCFC 12(b)(1) instead of 12(b)(6), but that the inaccuracy did not give rise to reversible error).

This consideration weighs heavily in favor of dismissal.  The procurement process is uniquely discretionary in nature, with agencies mostly free to choose among competing contractors.  *See Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) ("contracting officers are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process." (internal quotations omitted)); *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996) ("Procurement officials have substantial discretion to determine which proposal represents the best value for the government.").  This discretion is particularly prominent in Postal Service procurements, where Congress went to great lengths to ensure the Postal Service's independence.  *See* 39 U.S.C. § 2008(c) (authorizing the Postal Service to enter into contracts as it deems necessary); *id.* at § 410(a) (shielding the Postal Service from Federal procurement laws of general applicability).  Here, perhaps more than elsewhere, it is important for the Court to guard the Postal Service's domain over procurements, including its authority to establish binding administrative procedures for its insulated procurement process.

The second purpose behind prudential exhaustion – judicial efficiency – likewise weighs in favor of dismissal.  "When an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted, or at least piecemeal appeals may be avoided."  *McCarthy*, 503 U.S. at 145.  "And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration, especially in a complex or technical factual context."  *Id.*  These are the very principles the Postal Service sought to promote when establishing its two-step administrative process for resolving disagreements.  *See* 39 C.F.R. § 601.108(b) (the procedure for lodging disagreements with the SDR Official "is intended to expeditiously resolve disagreements that are not resolved at

the responsible contracting officer level; to reduce litigation expenses, inconvenience, and other costs for all parties; to facilitate successful business relationships with Postal Service suppliers, the supplier community, and other persons; and to develop further the basis for the Postal Service's purchasing decisions and the administrative records concerning those decisions.").

The Supreme Court has, however, recognized "three broad sets of circumstances" in which lower courts may properly exercise discretion to dispense with prudential exhaustion requirements. *McCarthy*, 503 U.S. at 146. The first is when exhaustion might cause "undue prejudice to subsequent assertion of a court action," perhaps due to "an unreasonable or indefinite timeframe for administrative action" or irreparable harm from the inability to seek immediate judicial relief. *Id.* at 146-47. The second is an "inadequate" administrative remedy, where the agency is either unable to consider the issues presented or lacks authority to grant effective relief. *Id.* at 147-48. And the third is where "the administrative body is shown to be biased or has otherwise predetermined the issue before it." *Id.* at 147.

None of these circumstances apply here. The Postal Service's purchasing regulations require the SDR Official to resolve disagreements "promptly" and usually within a 30-day timeframe, 39 C.F.R. §§ 601.108(e), (i), so that compliance with administrative remedies does not prejudice aggrieved suppliers in any way. Nor did this particular case require immediate resolution, as NGDVs are not expected to hit the roads until 2023. *See* Compl. at ¶ 73, ECF No. 1.[6] Additionally, the Postal Service's purchasing regulations empower the SDR Official to grant

---

[6] As further evidence that this case does not present the type of emergency that might necessitate immediate judicial relief, we note that Workhorse filed its protest almost three months after receiving the contracting officer's response to its disagreement, and that it has not asked the Court to restrain or enjoin the Postal Service prior to the resolution of its claims.

Workhorse the very relief it seeks in litigation, including termination of the award and re-evaluation of offerors' proposals. 39 C.F.R. § 601.108(g).  And Workhorse does not allege, anywhere in its complaint, that the SDR Official – the "administrative body" that would have been responsible for reviewing Workhorse's disagreement at step two of the administrative process – was somehow biased against Workhorse or had the result of Workhorse's disagreement predetermined.  *See generally* Compl., ECF No. 1.

Had Workhorse complied with the Postal Service's administrative process, it would have presented its case to a senior Postal Service procurement official without intimate familiarity of the NGDV procurement or the history between the parties.  This impartial official could have promptly investigated Workhorse's allegations and, if those allegations had merit, provided meaningful relief, thus obviating the need for judicial intervention.  Yet the SDR Official was never given that opportunity, because Workhorse decided to forego this administrative remedy.  As we explain above, seeking relief from the SDR Official was a mandatory step of the administrative process, which the Court may not excuse for any reason.  But, even if the Court considers exhaustion of this administrative remedy to be prudential, the considerations described by the Supreme Court – namely, protecting the Postal Service's authority over procurements and promoting judicial efficiency – counsel that dismissal remains appropriate.  The Court should not let Workhorse flout the administrative process established by the Postal Service.

## **CONCLUSION**

For these reasons, we respectfully request that the Court dismiss the complaint for failure to exhaust administrative remedies.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

MARTIN F. HOCKEY, JR.
Acting Director

/s/ Douglas K. Mickle
DOUGLAS K. MICKLE
Assistant Director

OF COUNSEL:

/s/ Borislav Kushnir
BORISLAV KUSHNIR

MICHELLE A. WINDMUELLER
MICHAEL F. KIELY
ROBERT J. DIETZ
Attorneys
United States Postal Service

Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 307-5928
Facsimile: (202) 353-0461
Email: Steven.Kushnir@usdoj.gov

July 6, 2021

Attorneys for Defendant