# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## Bid Protest

| | |
|---|---|
| WORKHORSE GROUP, INC. | **Redacted Version** |
| Plaintiff, | |
| v. | Case No. 21-1484 C |
| THE UNITED STATES, | Judge Zachary N. Somers |
| Defendant, | |
| and | |
| OSHKOSH DEFENSE, LLC, | |
| Defendant-Intervenor. | |

### DEFENDANT-INTERVENOR OSHKOSH DEFENSE, LLC'S
### MOTION TO DISMISS PLAINTIFF'S COMPLAINT

July 6, 2021

Scott Arnold
**BLANK ROME LLP**
1825 Eye Street, NW
Washington, D.C. 20006
T: (202) 420-4736
F: (202) 379-9274
E: Sarnold@blankrome.com
*Counsel for Oshkosh Defense, LLC*

Of Counsel:
Justin A. Chiarodo
Stephanie M. Harden
Robyn N. Burrows
Michael J. Montalbano
BLANK ROME LLP
1825 Eye Street, NW
Washington, D.C. 20006

# TABLE OF CONTENTS

Page

I. STATEMENT OF THE CASE ................................................................................................1
II. QUESTION PRESENTED ....................................................................................................2
III. FACTUAL BACKGROUND .................................................................................................2
    A. The USPS's Next Generation Delivery Vehicle Program ........................................2
    B. USPS Selects Oshkosh Over Workhorse ..................................................................3
    C. Workhorse Fails To Complete the USPS Administrative Appeal Process ...............4
IV. STANDARD OF REVIEW ....................................................................................................6
V. ARGUMENT .........................................................................................................................7
    A. Workhorse's Failure to Exhaust USPS's Mandatory Administrative Dispute Resolution Process Requires Dismissal of Its Complaint ..........................7
    B. USPS's Regulations Require Disappointed Offerors to Exhaust Administrative Remedies before Seeking Judicial Review .....................................8
    C. Workhorse's Failure to Exhaust USPS's Dispute Resolution Process is Fatal to Its Complaint ...................................................................................................9
    D. The Complaint Should Be Dismissed Regardless of Whether the Exhaustion Requirement is Jurisdictional ...............................................................11
        1. If the Exhaustion Requirement is Deemed "Jurisdictional," Dismissal is Required as a Matter of Law ..................................................11
        2. The Court Should Dismiss the Protest Even if the Exhaustion Requirement is Not "Jurisdictional" ............................................................12
VI. CONCLUSION .....................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................................7

*Bell/Heery v. United States*,
   739 F.3d 1324 (Fed. Cir. 2014)......................................................................................6

*Cedars-Sinai Med. Ctr. v. Watkins*,
   11 F.3d 1573 (Fed. Cir. 1993)........................................................................................6

*Chevron, U.S.A. Inc. v. Natural Res. Def. Council, Inc.*,
   467 U.S. 837 (1984)....................................................................................................11

*Corus Staal BV v. United States*,
   502 F.3d 1370 (Fed. Cir. 2007)....................................................................................13

*Eberhart v. United States*,
   546 U.S. 12 (2005)......................................................................................................12

*Fort Bend County, Texas v. Davis*,
   139 S. Ct. 1843 (2019)................................................................................................12

*Godwin v. United States*,
   338 F.3d 1374 (Fed. Cir. 2003)......................................................................................6

*Hamlet v. United States*,
   873 F.2d 1414 (Fed. Cir. 1989)......................................................................................6

*Harmonia Holdings Grp., LLC v. United States*,
   147 Fed. Cl. 756 (2020)...............................................................................................13

*McCarthy v. Madigan*,
   503 U.S. 140 (1992)....................................................................................................12

*McKart v. United States*,
   395 U.S. 185 (1969)......................................................................................................7

*Mittal Steel Point Lisas Ltd. v. United States*,
   548 F.3d 1375 (Fed. Cir. 2008)......................................................................................8

*Palladian Partners, Inc. v. United States*,
 783 F.3d 1243 (Fed. Cir. 2015)..................................................................................7, 10, 11, 13

*Sandvik Steel Co. v. United States*,
 164 F.3d 596 (Fed. Cir. 1998)..................................................................................................7, 10

*Scheuer v. Rhodes*,
 416 U.S. 232 (1974), *overruled on other grounds by Harlow v. Fitzgerald*,
 457 U.S. 800 (1982)......................................................................................................................6

*Sebelius v. Auburn Reg. Med. Ctr.*,
 568 U.S. 145 (2013)....................................................................................................................11

*Sims v. Afpel*,
 530 U.S. 103 (2000)....................................................................................................................10

*Ultra-Precision Mfg. v. Ford Motor Co.*,
 338 F.3d 1353 (Fed. Cir. 2003)....................................................................................................6

*United States v. L.A. Trucker Truck Lines, Inc.*,
 344 U.S. 33 (1952)........................................................................................................................8

*Weinberger v. Salfi*,
 422 U.S. 749 (1975)....................................................................................................................10

*Williams v. United States*,
 71 Fed. Cl. 194 (2006) .................................................................................................................6

**Statutes**

39 U.S.C. § 401(2) ..............................................................................................................................12

39 U.S.C. § 409....................................................................................................................................12

**Other Authorities**

13 C.F.R. § 121.1102..........................................................................................................................10

39 C.F.R. § 601.107 ....................................................................................................................5, 8, 10

39 C.F.R. § 601.107(b) ...................................................................................................................4, 8

39 C.F.R. § 601.108 ............................................................................................................................10

39 C.F.R. § 601.108(a) ...................................................................................................................4, 8

39 C.F.R. § 601.108(b) ........................................................................................................................9

39 C.F.R. § 601.108(d)(3)..........................................................................................................5, 9

39 C.F.R. § 601.108(h) ......................................................................................................8, 9, 11, 12

39 C.F.R. § 601.108(i) ...........................................................................................................5, 9, 13

RCFC 12(b)(1) ..............................................................................................................................1, 6

RCFC 12(b)(6).................................................................................................................................1, 6

Pursuant to the Court's June 17, 2021 Scheduling Order (Dkt. No. 15), and Rules 12(b)(1) and (6) of the Rules of the Court of Federal Claims ("RCFC"), Defendant-Intervenor Oshkosh Defense, LLC ("Oshkosh"), respectfully requests that the Court dismiss the complaint filed by plaintiff Workhorse Group, Inc. ("Workhorse") for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted because Workhorse failed to exhaust its administrative remedies with the United States Postal Service ("USPS").

## I. STATEMENT OF THE CASE

The Court should dismiss Workhorse's Complaint because Workhorse failed to exhaust its administrative remedies with the USPS. As the Federal Circuit Court of Appeals has recognized, the doctrine of administrative exhaustion stands for the commonsense principle that courts should not interfere with administrative decision making until an agency has fully reviewed a matter and issued a final decision. This approach ensures more thorough agency reviews, reduces the burden of litigation, and ensures that, if courts must become involved, they do so on a complete record. To prevent parties from bypassing these administrative remedies, courts typically decline to hear a case where the plaintiff has failed to exhaust the administrative appeal process.

USPS has such an administrative appeal process. If a disappointed offeror objects to a USPS award, the offeror must first submit a disagreement letter to the contracting officer, and then appeal the denial of the disagreement letter to the USPS's Supplier Disagreement Resolution ("SDR") official. The disappointed offeror may file a lawsuit in federal court only after the SDR official issues a final decision on the disagreement.

Workhorse did not follow this straightforward process. After receiving notice that Oshkosh's more cost-effective and technically superior proposal was selected for award,

Workhorse initiated step one of USPS's administrative appeal process by submitting a disagreement letter to the contracting officer. The contracting officer resolved the disagreement by finding that the award was proper and Workhorse's claims unsupported. Instead of appealing the denial to the SDR official as required, Workhorse sat idle for three months before initiating this action. Workhorse's failure to complete the administrative appeal process is fatal to its case. The Court should, therefore, dismiss Workhorse's protest in its entirety and with prejudice.

## II. QUESTION PRESENTED

(1) Whether Workhorse's Complaint must be dismissed because Workhorse failed to exhaust its administrative remedies with the USPS before filing a protest at the United States Court of Federal Claims.

## III. FACTUAL BACKGROUND[1]

### A. The USPS's Next Generation Delivery Vehicle Program

The USPS operates a fleet of over 200,000 vehicles in the United States and its territories. Approximately 163,000 of those vehicles are approaching the end of their life cycle and require costly modifications and maintenance to extend their use. In preparation for their retirement, the USPS developed the Next Generation Delivery Vehicle Program (the "NGDV Program") to "design a vehicle that places the operator's interactions with the vehicle at the forefront of the design[,]" minimizing drivers' time and effort, and safely, and effectively, storing postal cargo. Dkt. No. 1 ¶ 17 (hereinafter, "Compl.") (quoting Solicitation, Attachment 1, Amend. 1 (Statement of Work)).

---

[1] For the sole purpose of this motion, Oshkosh will treat the allegations in Workhorse's complaint as true. Oshkosh reserves the right to challenge the accuracy of Workhorse's allegations in subsequent filings.

2

The NGDV Program proceeded in phases, including the Prototype Phase and the Production Phase. Compl. ¶ 18. On December 27, 2019, USPS issued the solicitation for the Production Phase (the "Solicitation"), which sought proposals for the award of an IDIQ fixed-price contract for a minimum of 50,000 and maximum of 165,000 NGDVs. Compl. ¶¶ 24-25.

The Solicitation stated that the USPS would award the contract "to the offeror whose offer conforming to the solicitation is deemed to offer the Postal Service the best value, price and other factors, as specified" in the Solicitation. Compl. ¶ 27 (quoting Solicitation at 9). USPS would conduct its best-value analysis through two primary evaluation factors: (1) Total Cost of Ownership; and (2) Technical. Compl. ¶ 34. The Technical factor was broken down into three subfactors in order of descending importance: Design Quality and Technical Approach, Supplier Capability, and Past Performance. Compl. ¶ 36. Each of the Technical subfactors were broken down further into other subfactors. *Id.* The Technical factor was more important than Total Cost of Ownership in calculating the best value to the USPS. Compl. ¶ 37.

**B.     USPS Selects Oshkosh Over Workhorse**

On July 14, 2020, Workhorse submitted a proposal in response to the Solicitation proposing an all-electric vehicle design. Compl. ¶¶ 52-53. Workhorse also submitted an unsolicited proposal from ▇▇▇▇▇▇▇▇▇▇▇▇ to build and maintain a nation-wide electric vehicle infrastructure, which the USPS would need if it were to transition to all-electric vehicles as Workhorse proposed. Compl. ¶ 60. Between September 3, 2020 and October 28, 2020, Workhorse and USPS engaged in both written and oral discussions. Compl. ¶¶ 62-65.

On February 23, 2021, USPS notified Workhorse that USPS had awarded a single IDIQ contract to Oshkosh for the provision of NGDVs over 10 years. Compl. ¶ 66. The estimated

value of the contract is $3.1 billion. *Id.* In contrast to Workhorse's all-electric approach, Oshkosh proposed a more flexible approach that utilized an internal-combustion-engine vehicle in the near term with the option to transition to an electric vehicle in the medium to long term. Compl. ¶ 67.

After learning that its proposal had not been selected, Workhorse requested a debriefing, which was held on March 3, 2021. Compl. ¶ 74. At the debriefing, the USPS described certain strengths and weaknesses it identified in Workhorse's proposal. *Id.* The USPS also indicated that Workhorse's proposal was rated less favorably than Oshkosh's proposal on the Technical evaluation factor, the most important factor. *Id.*

### C. Workhorse Fails To Complete the USPS Administrative Appeal Process

USPS regulations set out a mandatory, two-step process that disappointed offerors must follow if they disagree with the USPS's award decision. First, a disappointed offer (referred to in the regulations as the "supplier") must "lodge" its "disagreement" about the award of a contract with the contracting officer "within 10 days of the date the supplier received notification of award or 10 days from the date the supplier received a debriefing, whichever is later." 39 C.F.R. § 601.107(b). The contracting officer then has 10 days to consider the disagreement, before conveying its decision to the supplier. *Id.*

Second, "if the supplier is not satisfied with the contracting officer's resolution of the disagreement . . . the SDR Official is available to provide final resolution of the matter." 39 C.F.R. § 601.108(a). The disappointed offeror "must lodge the disagreement with the SDR Official within 10 days after the supplier first receives notification of the contracting officer's resolution." 39 C.F.R. § 601.108(d)(3). The SDR Official will then resolve the disagreement

4

"within approximately 30 days" – a time period which "may be shortened or lengthened depending on the complexity of the issues and other relevant considerations." 39 C.F.R. § 601.108(i).

After Workhorse learned that it was not selected for an award, it initiated the first step of USPS's two-step disagreement process by submitting a "disagreement letter" to the USPS pursuant to 39 CFR § 601.107. Compl. ¶ 75. On March 22, 2021, USPS responded to the disagreement letter outlining numerous weaknesses that were identified in Workhorse's proposal. Compl. ¶¶ 76-78. USPS also explained that Workhorse's vehicle was ranked ▉ out of the five vehicles USPS evaluated, and had received a Technical score (the most important factor) that was approximately ▉ of Oshkosh's score:

| Supplier Name | Technical Score | Technical Ranking | TCO | TCO Ranking | Best Value Ranking |
|---|---|---|---|---|---|
| Oshkosh (ICE) | ▉ | 1 | ▉ | 1 | 1 |
| Oshkosh (BEV) | ▉ | 2 | ▉ | 4 | 2 |
| ▉ | ▉ | ▉ | ▉ | ▉ | ▉ |
| Workhorse (BEV) | ▉ | 5 | ▉ | 2 | 5 |

Compl. ¶ 81.

After Workhorse received the response letter, USPS regulations required Workhorse, to the extent it wished to pursue the matter, to "lodge the disagreement with the SDR Official." 39 C.F.R. § 601.108(d)(3). Workhorse declined to follow USPS's mandatory disagreement process, but instead filed the instant protest with the Court. Compl. ¶ 90.

5

IV.     **STANDARD OF REVIEW**

Pursuant to RCFC 12(b)(1), a plaintiff's claim must be dismissed if the plaintiff fails to establish that the Court has subject-matter jurisdiction. RCFC 12(b)(1). "Jurisdiction is a threshold issue and the Court must satisfy itself that it has jurisdiction to hear and decide a case before proceeding to the merits." *Ultra-Precision Mfg. v. Ford Motor Co.*, 338 F.3d 1353, 1356 (Fed. Cir. 2003) (citations and quotation marks omitted). In considering a motion to dismiss for lack of jurisdiction, the Court accepts as true the complaint's undisputed allegations of fact and construes the facts in the light most favorable to the plaintiff. *See Williams v. United States*, 71 Fed. Cl. 194, 197 (2006) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). Once the defendant challenges facts upon which plaintiff bases this Court's jurisdiction, however, the plaintiff bears the burden to demonstrate that jurisdiction exists. *See Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993) ("The government's factual challenge to the court's jurisdiction placed the burden on Cedars to demonstrate facts sufficient to support its contention regarding the court's jurisdiction. Once challenged, allegations alone are insufficient to meet the complainant's burden.").

Pursuant to RCFC 12(b)(6), dismissal for failure to state a claim should be granted when a plaintiff fails to plead facts entitling it to a legal remedy. *See Godwin v. United States*, 338 F.3d 1374, 1377 (Fed. Cir. 2003). When deciding a motion to dismiss, the factual allegations of the complaint should be construed favorably to the plaintiff. *See Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed. Cir. 1989). But the rule that a court must accept as true all well-pleaded factual allegations does not apply to legal conclusions. *Bell/Heery v. United States*, 739 F.3d

6

1324, 1330 (Fed. Cir. 2014). A court may adopt a two-prong approach of "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determining whether the remaining well-pleaded factual allegations, if any, "plausibly give rise to an entitlement of relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Rather, a plaintiff's allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

V. **ARGUMENT**

    A. **Workhorse's Failure to Exhaust USPS's Mandatory Administrative Dispute Resolution Process Requires Dismissal of Its Complaint**

Workhorse's Complaint should be dismissed in its entirety because Workhorse failed to exhaust its mandatory administrative remedies before USPS. "'The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law.'" *Palladian Partners, Inc. v. United States*, 783 F.3d 1243, 1254 (Fed. Cir. 2015) (quoting *McKart v. United States*, 395 U.S. 185 (1969)). "It provides that 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *Palladian*, 783 F.3d at 1254 (quoting *Sandvik Steel Co. v. United States*, 164 F.3d 596, 599 (Fed. Cir. 1998)) (quoting *McKart*, 395 U.S. at 193) (internal quotations omitted). The doctrine "stems from the notion that '"[s]imple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred *against objection made at the time appropriate under its practice*."'" *Palladian*, 783 F.3d at 1254

7

(quoting *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1383-84 (Fed. Cir. 2008) (quoting *United States v. L.A. Trucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952)).

      **B.     USPS's Regulations Require Disappointed Offerors to Exhaust Administrative Remedies before Seeking Judicial Review**

Here, USPS's regulations plainly require exhaustion of administrative remedies before pursuing judicial relief. 39 C.F.R. § 601.108(h) ("The Postal Service's final contract award, as described in paragraph § 601.108(g), may be appealed to a Federal court with jurisdiction based only upon an alleged violation of the regulations contained in this part or an applicable public law enacted by Congress. <u>The party lodging the disagreement may seek review of the Postal Service's final contract award only after the mandatory administrative remedies provided under § 601.107 and § 601.108 have been exhausted</u>.") (emphasis added).

The regulations describe a two-step process that must be exhausted before a disappointed bidder may seek judicial review. <u>First</u>, a disappointed bidder must "lodge" its "disagreement" about the award of a contract with the contracting officer "within 10 days of the date the supplier received notification of award or 10 days from the date the supplier received a debriefing, whichever is later." 39 C.F.R. § 601.107(b). The contracting officer then has 10 days to consider the disagreement, before conveying its decision to the supplier. *Id.* <u>Second</u>, "if the supplier is not satisfied with the contracting officer's resolution of the disagreement . . . the SDR Official is available to provide final resolution of the matter." 39 C.F.R. § 601.108(a). As relevant here, "[w]here a supplier is dissatisfied with the contracting officer's resolution of a disagreement under § 601.107, the supplier must lodge the disagreement with the SDR Official within 10 days after the supplier first receives notification of the contracting officer's resolution." 39 C.F.R. § 601.108(d)(3). The SDO Official is to resolve the disagreement "within

8

approximately 30 days" – a time period which "may be shortened or lengthened depending on the complexity of the issues and other relevant considerations." 39 C.F.R. § 601.108(i).

As noted, USPS's regulations expressly characterize this two-step process as a "mandatory" remedy that must be "exhausted" before seeking judicial review. 39 C.F.R. § 601.108(h). The regulations further indicate that there is no "final" USPS decision until both steps of this process are complete. *Id.*; *see also id.* § 601.108(g) ("A resolution by the SDR Official will be final and binding. <u>If the SDR Official's final resolution affirms the original contract award of the contracting officer, the contracting officer's original contract award becomes the Postal Service's final contract award, and may be subject to judicial review as described in paragraph (h) of this section</u>.") (emphasis added).

USPS's regulations explain the purpose of this mandatory dispute resolution procedure as follows:

> This procedure is intended to expeditiously resolve disagreements that are not resolved at the responsible contracting officer level; to reduce litigation expenses, inconvenience, and other costs for all parties; to facilitate successful business relationships with Postal Service suppliers, the supplier community, and other persons; and to develop further the basis for the Postal Service's purchasing decisions and the administrative records concerning those decisions.

39 C.F.R. § 601.108(b).

### C. Workhorse's Failure to Exhaust USPS's Dispute Resolution Process is Fatal to Its Complaint

Here, the Complaint alleges that Workhorse completed the first step of this two-step process, but not the second step. Compl. ¶¶ 75-76 (alleging that Workhorse submitted a "disagreement" pursuant to 39 C.F.R. § 601.107, and that this disagreement was denied), ¶ 90 (alleging that Workhorse initiated this protest after its disagreement letter was denied, without

9

alleging that Workhorse first sought the SDR Official's review pursuant to 39 C.F.R. § 601.108). Because Workhorse did not exhaust USPS's administrative dispute resolution process, this protest should be dismissed.

The Federal Circuit's decision in *Palladian* is instructive. There, the Federal Circuit reversed the COFC's ruling on the protester's Motion for Judgment on the Administrative Record, finding that the case should have been dismissed because the protester had not exhausted the Small Business Administration's ("SBA") mandatory administrative remedies before pursuing its COFC protest. *Palladian*, 783 F.3d at 1258 ("Given these circumstances, we conclude that SBA's regulations require an interested party to participate in a pending OHA NAICS code appeal, or be precluded from filing suit. As such, Palladian's failure to participate in the pending OHA appeal was a failure to exhaust its administrative remedies."). In reaching this holding, the Federal Circuit made clear that "[e]xhaustion may be required by statute, regulation, or judicially-created common law." *Id.* at 1255 (citing *Weinberger v. Salfi*, 422 U.S. 749 (1975); *Sims v. Apfel*, 530 U.S. 103, 108 (2000)). That is, "the 'fact that the administrative remedy was provided by a regulation rather than by a statute does not make the exhaustion doctrine inapplicable or inappropriate.'" *Palladian*, 783 F.3d at 1255 (quoting *Sandvik*, 164 F.3d at 600).

Just as in *Palladian*, here, too, USPS's regulations require exhaustion, and this requirement is set forth in very similar regulatory language. *Compare* 13 C.F.R. § 121.1102 ("The OHA appeal is an administrative remedy that must be exhausted before judicial review of a NAICS code designation may be sought in a court.") *with* 39 C.F.R. § 601.108(h) ("The Postal Service's final contract award, as described in paragraph § 601.108(g), may be appealed to a

10

Federal court with jurisdiction based only upon an alleged violation of the regulations contained in this part or an applicable public law enacted by Congress. <u>The party lodging the disagreement may seek review of the Postal Service's final contract award only after the mandatory administrative remedies provided under § 601.107 and § 601.108 have been exhausted</u>.").

> **D.** **The Complaint Should Be Dismissed Regardless of Whether the Exhaustion Requirement is Jurisdictional**
>
> > 1. <u>If the Exhaustion Requirement is Deemed "Jurisdictional," Dismissal is Required as a Matter of Law</u>

Although the Court need not hold that USPS's regulatory exhaustion requirement is jurisdictional to dismiss the case, the Federal Circuit's *Palladian* decision provides ample support for such a finding. There, the Federal Circuit held that, where "Congress has specifically delegated rulemaking authority to an agency, courts 'lack[] authority to undermine the regime established . . . unless [the] regulation is 'arbitrary, capricious, or manifestly contrary to the statute.'" *Palladian*, 783 F.3d at 1258 (quoting *Sebelius v. Auburn Reg. Med. Ctr.*, 568 U.S. 145 (2013) (quoting *Chevron, U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)). The Court further ruled that several of the potential exceptions to the exhaustion doctrine did not apply because the SBA's regulations made the exhaustion requirement mandatory. *Palladian*, 783 F.3d at 1259 ("While it is true that there are circumstances under which some types of exhaustion could be waived, the circumstances before us do not fall into that category."), 1260 (contrasting cases involving an exhaustion requirement in connection with agency rulemaking which does not involve a mandatory "statutory or regulatory exhaustion requirement").

Here, Congress expressly delegated rulemaking authority to USPS, even going so far as to exempt USPS procurements from most of the traditional procurement laws that apply to most

11

other procurements. 39 U.S.C. §§ 401(2), 409. And, as discussed, USPS's regulations clearly state that the exhaustion requirement is mandatory. 39 C.F.R. § 601.108(h). Therefore, the Court should dismiss Workhorse's protest on the basis that the Court does not have jurisdiction to consider the matter.

> 2. The Court Should Dismiss the Protest Even if the Exhaustion Requirement is Not "Jurisdictional"

However, even if the requirement is not deemed "jurisdictional," the Court still must dismiss the case unless one of the limited exceptions to the exhaustion principle apply. *See Fort Bend County, Texas v. Davis*, 139 S. Ct. 1843, 1849 (2019) ("A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party 'properly raise[s]' it.") (quoting *Eberhart v. United States*, 546 U.S. 12, 19, (2005)).

Here, no exception to the exhaustion principle excuses Workhorse's failure to exhaust its administrative remedies. For example, Workhorse cannot claim that its "interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further," *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992), because Workhorse waited over three-and-a-half months to file this protest after it learned Oshkosh won the contract on February 23, 2021, *see* Compl. ¶ 8, and nearly three months after receiving USPS's response to its disagreement on March 22, 2021, Compl. ¶ 76. In the face of such a delay, Workhorse cannot plausibly claim that judicial review was so urgent that it could not participate in USPS's mandatory dispute resolution procedure before its SDR Official – a process which is designed to take approximately 30 days to complete. 39 C.F.R. § 601.108(i).

Workhorse is also precluded from relying on the "futility" exception to the administrative exhaustion doctrine. The Federal Circuit has instructed that this exception must be applied very narrowly, and that the fact that an adverse decision may be likely provides no basis for excusing a failure to exhaust administrative remedies. *Palladian*, 783 F.3d at 1256 n.3 ("'The mere fact that an adverse decision may have been likely does not excuse a party from a statutory or regulatory requirement that it exhaust administrative remedies.'") (quoting *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007)); *see also Harmonia Holdings Grp., LLC v. United States*, 147 Fed. Cl. 756, 774 (2020).

## VI.     CONCLUSION

Workhorse failed to exhaust its administrative remedies as required under USPS regulations and Federal Circuit precedent. For the reasons stated above, Oshkosh respectfully requests that the Court grant its Motion to Dismiss, and dismiss Workhorse's entire complaint with prejudice.

13

Dated: July 6, 2021　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　/s/ Scott Arnold
　　　　　　　　　　　　　　　　　　　　Scott Arnold
　　　　　　　　　　　　　　　　　　　　**BLANK ROME LLP**
　　　　　　　　　　　　　　　　　　　　1825 Eye Street, NW
　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20006
　　　　　　　　　　　　　　　　　　　　T: (202) 420-4736
　　　　　　　　　　　　　　　　　　　　F: (202) 379-9274
　　　　　　　　　　　　　　　　　　　　E: Sarnold@blankrome.com
　　　　　　　　　　　　　　　　　　　　*Counsel for Oshkosh Defense, LLC*

Of Counsel:
Justin A. Chiarodo
Stephanie M. Harden
Robyn N. Burrows
Michael J. Montalbano
BLANK ROME LLP
1825 Eye Street, NW
Washington, D.C. 20006

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of July, 2021, I caused a copy of the foregoing Oshkosh Defense, LLC's Motion to Dismiss Plaintiff's Complaint to be served via electronic service through the Courts ECF filing system on all parties of record.

/s/ Scott Arnold
Scott Arnold
**BLANK ROME LLP**
1825 Eye Street, NW
Washington, D.C. 20006
T: (202) 420-4736
F: (202) 379-9274
E: Sarnold@blankrome.com
*Counsel for Oshkosh Defense, LLC*

Case 1:21-cv-01484-TNM Document 37 Filed 07/12/21 Page 20 of 20