**REDACTED
VERSION**

No. 21-1484C
(Judge Somers)

_____

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

_____

WORKHORSE GROUP, INC.,
Plaintiff,

v.

THE UNITED STATES,
Defendant,

and

OSHKOSH DEFENSE, LLC,
Defendant-Intervenor.

_____

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

_____

|  |  |
|---|---|
|  | BRIAN M. BOYNTON |
|  | Acting Assistant Attorney General |
|  |  |
|  | MARTIN F. HOCKEY, JR. |
|  | Acting Director |
|  |  |
|  | DOUGLAS K. MICKLE |
|  | Assistant Director |
|  |  |
| OF COUNSEL: | BORISLAV KUSHNIR |
|  | Trial Attorney |
| MICHELLE A. WINDMUELLER | Commercial Litigation Branch |
| MICHAEL F. KIELY | Civil Division |
| ROBERT J. DIETZ | U.S. Department of Justice |
| Attorneys | P.O. Box 480 |
| United States Postal Service | Ben Franklin Station |
|  | Washington, DC 20044 |
|  | Telephone:  (202) 307-5928 |
|  | Facsimile:  (202) 353-0461 |
|  | Email: Steven.Kushnir@usdoj.gov |
|  |  |
| August 3, 2021 | Attorneys for Defendant |

## <u>TABLE OF CONTENTS</u>

ARGUMENT ................................................................................................................ 1

I.      The Court Must Dismiss This Case Because Workhorse Failed To Exhaust
The Postal Service's Mandatory Exhaustion Requirement ................................... 2

      A.     Workhorse's Focus On The Court's Jurisdiction Is Misplaced ................. 2

      B.     The Postal Service Has The Requisite Authority To Establish An
Administrative Process For Resolving Disagreements ............................. 5

      C.     Ultimately, Workhorse Cannot Escape The Unequivocal And Directly
Applicable Holdings Of *Palladian Partners* ............................................ 7

II.     Even If The Postal Service's Exhaustion Requirement Was Prudential,
Workhorse Offers No Compelling Reason For Excusing Its Failure To
Exhaust Administrative Remedies ...................................................................... 12

III.    Workhorse Has Forfeited Its Appointments Clause Challenge ........................... 15

IV.    Dismissal Is The Only Result Supported By Applicable Law ............................. 18

CONCLUSION ........................................................................................................... 19

i

## **TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Anselma Crossing, L.P. v. U.S. Postal Serv.*,
   637 F.3d 238 (3d Cir. 2011)..................................................................... 6

*Beta Analytics Int'l, Inc. v. United States*,
   67 Fed. Cl. 384 (2005) ........................................................................... 10

*Cleveland Assets, LLC v. United States*,
   883 F.3d 1378 (Fed. Cir. 2018)............................................................... 15

*Corus Staal BV v. United States*,
   502 F.3d 1370 (Fed. Cir. 2007)................................................... 10, 11, 14

*Dellew Corp. v. United States*,
   855 F.3d 1375 (Fed. Cir. 2017)............................................................... 11

*E.W. Bliss Co. v. United States*,
   77 F.3d 445 (Fed. Cir. 1996)................................................................... 10

*Emery Worldwide Airlines, Inc. v. United States*,
   264 F.3d 1071 (Fed. Cir. 2001)................................................................. 3

*Fleming v. U.S. Dep't of Agric.*,
   987 F.3d 1093 (D.C. Cir. 2021)................................................................ 4

*Franchise Tax Bd. of Cal. v. U.S. Postal Serv.*,
   467 U.S. 512 (1984)................................................................................. 7

*Freytag v. Comm'r*,
   501 U.S. 868 (1991)............................................................................... 15

*Gonnella v. U.S. Sec. & Exch. Comm'n*,
   954 F.3d 536 (2d Cir. 2020).................................................................... 16

*Graham Eng'g Corp. v. United States*,
   510 F.3d 1385 (Fed. Cir. 2007)................................................................. 6

*Harmonia Holdings Grp., LLC v. United States*,
   999 F.3d 1397 (Fed. Cir. 2021)................................................................. 8

*Hassen v. Gov't of Virgin Islands*,
   861 F.3d 108 (3d Cir. 2017)..................................................................... 4

*Hawpe Const., Inc. v. United States*,
  46 Fed. Cl. 571 (2000) ........................................................................... 8

*Hoogerheide v. I.R.S.*,
  637 F.3d 634 (6th Cir. 2011) ................................................................. 4

*Impresa Construzioni Geom. Domenico Garufi v. United States,*,
  238 F.3d 1324 (Fed. Cir. 2001) ........................................................... 10

*Itochu Bldg. Products v. United States*,
  733 F.3d 1140 (Fed. Cir. 2013) ........................................................... 14

*Jones v. Bock*,
  549 U.S. 199 (2007) ............................................................................. 3

*Malouf v. Sec. & Exch. Comm'n*,
  933 F.3d 1248 (10th Cir. 2019) ..................................................... 16, 17

*McCarthy v. Madigan*,
  503 U.S. 140 (1992) ........................................................................... 12

*McKart v. United States*,
  395 U.S. 185 (1969) ........................................................................... 11

*Mourning v. Fam. Publications Serv., Inc.*,
  411 U.S. 356 (1973) ............................................................................. 6

*Myers v. Bethlehem Shipbuilding Corp.*,
  303 U.S. 41 (1938) ........................................................................ 16, 17

*N.L.R.B. v. RELCO Locomotives, Inc.*,
  734 F.3d 764 (8th Cir. 2013) ............................................................... 16

*Neely v. United States*,
  285 F.2d 438 (Ct. Cl. 1961) ................................................................. 9

*Palladian Partners, Inc. v. United States*,
  783 F.3d 1243 (Fed. Cir. 2015) ..................................................*passim*

*Reed Elsevier, Inc. v. Muchnick*,
  559 U.S. 154 (2010) ............................................................................. 3

*Ross v. Blake*,
  136 S. Ct. 1850 (2016) ......................................................................... 3

*Sandvik Steel Co. v. United States*,
    164 F.3d 596 (Fed. Cir. 1998)........................................................................ 10

*Seminole Tribe of Fla. v. Florida*,
    517 U.S. 44 (1996)............................................................................................ 9

*Stone Container Corp. v. United States*,
    229 F.3d 1345 (Fed. Cir. 2000)........................................................................ 9

*Strickland v. United States*,
    423 F.3d 1335 (Fed. Cir. 2005)........................................................................ 9

*Tesoro Ref. & Mktg. Co. v. F.E.R.C.*,
    552 F.3d 868 (D.C. Cir. 2009)........................................................................ 14

*Thorpe v. Hous. Auth. of City of Durham*,
    393 U.S. 268 (1969)......................................................................................... 6

*U.S. Postal Serv. v. Flamingo Indus. (USA) Ltd.*,
    540 U.S. 736 (2004)......................................................................................... 6

*United States v. Arthrex, Inc.*,
    141 S. Ct. 1970 (2021).................................................................................... 15

*United States v. L.A. Tucker Truck Lines, Inc.*,
    344 U.S. 33 (1952)................................................................................... 16, 17

*Woodford v. Ngo*,
    548 U.S. 81 (2006).......................................................................................... 18

*Yakus v. United States*,
    321 U.S. 414 (1944)........................................................................................ 15

**<u>Statutes</u>**

7 U.S.C. § 6912......................................................................................................... 4

26 U.S.C. § 7433....................................................................................................... 4

39 U.S.C. § 201......................................................................................................... 6

39 U.S.C. § 401.................................................................................................. 5, 10

39 U.S.C. § 410......................................................................................................... 7

39 U.S.C. § 2008....................................................................................................... 7

**<u>Regulations</u>**

39 C.F.R. § 601.107 ................................................................................................................ 13

39 C.F.R. § 601.108 ........................................................................................................... *passim*

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### BID PROTEST

|  |  |  |
|---|---|---|
| WORKHORSE GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 21-1484C |
| THE UNITED STATES, | ) | |
| | ) | (Judge Somers) |
| Defendant, | ) | |
| | ) | ██████████████ |
| and | ) | |
| | ) | |
| OSHKOSH DEFENSE, LLC, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |
| | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Pursuant to Rule 7.2(b)(2) of the Rules of the United States Court of Federal Claims (RCFC), as well as the Court's orders from June 17, 2021 (ECF No. 15) and July 26, 2021 (ECF No. 41), defendant, the United States, respectfully files this reply in support of its motion to dismiss (ECF No. 29).  For the reasons provided herein, and for the reasons stated in our moving papers, the Court should dismiss the complaint for failure to exhaust administrative remedies.[1]

## ARGUMENT

To start, Workhorse does not dispute – and therefore concedes – much of the foundation on which our motion to dismiss is built.  Workhorse does not contest that the Postal Service's purchasing regulations, including the exhaustion requirement in 39 C.F.R. § 601.108(h), apply to the NGDV procurement.  Nor does Workhorse disagree that this exhaustion requirement plainly

---

[1] For consistency, we continue to use terms previously defined in our moving papers.

and unambiguously requires exhaustion of the Postal Service's administrative remedies, including resolution by the SDR Official at step two of the administrative process, before judicial review becomes available.  And Workhorse does not dispute the fact that it never lodged a disagreement with the SDR Official.  All parties thus agree that the Postal Service's purchasing regulations plainly required Workhorse to lodge a disagreement with the SDR Official, yet Workhorse failed to do so before filing this protest.  As we establish in our moving papers, it is therefore undisputed that Workhorse failed to exhaust applicable administrative remedies.  *See* Def. Mot. at 9-10, ECF No. 29.

I.      **The Court Must Dismiss This Case Because Workhorse Failed To Exhaust The Postal Service's Mandatory Exhaustion Requirement**

Instead of challenging our reading of the purchasing regulations or their application to the particular facts of this case, Workhorse primarily attacks the regulations themselves.  It argues that the Postal Service could not have created a mandatory exhaustion requirement at all, because doing so would impermissibly limit this Court's jurisdictional reach and be *ultra vires* to applicable statutory authority.  Workhorse also seeks to distinguish *Palladian Partners, Inc. v. United States*, 783 F.3d 1243 (Fed. Cir. 2015), and other cases in which the Federal Circuit recognized mandatory exhaustion requirements created by regulation.  The Court should reject these arguments, which either misconstrue our position or conflict with applicable law.

A.      **Workhorse's Focus On The Court's Jurisdiction Is Misplaced**

Workhorse spends most of its opposition brief arguing that Postal Service regulations cannot deprive this Court of the subject-matter jurisdiction bestowed by Congress through the Tucker Act.  *See* Pl. Opp'n at 9-11, 16-18, ECF No. 38.  This argument, however, in no way undermines our position.  We did *not* argue in our motion that the exhaustion requirement in 39

C.F.R. § 601.108(h) is a jurisdictional prerequisite to suit.  *See generally* Def. Mot., ECF No. 29.

To the contrary, we expressly acknowledged that the Court has subject-matter jurisdiction over

Postal Service procurements like the one at issue here, *see id.* at 3 n.1 (citing *Emery Worldwide*

*Airlines, Inc. v. United States*, 264 F.3d 1071 (Fed. Cir. 2001)), and explained that we bring our

motion pursuant to both RCFC 12(b)(1) and 12(b)(6) only because this Court has not been

consistent in its treatment of regulatory exhaustion requirements, *see id.* at 14 n.5.

    As we explain in our motion, the question before the Court is not whether the Postal

Service's exhaustion requirement is jurisdictional or not.  Rather, the question is whether this

requirement is mandatory or prudential.  *See* Def. Mot. at 10-11, ECF No. 29.

    Workhorse appears to conflate "mandatory" and "jurisdictional" requirements into a

single category, as if the two terms were synonymous.  They are not.  In fact, the Supreme Court

has made clear that nonjurisdictional exhaustion requirements can still be "mandatory," and thus

not amenable to a trial court's discretion.  In *Jones v. Bock*, 549 U.S. 199 (2007), for example,

the Court addressed an exhaustion requirement within the Prison Litigation Reform Act of 1995

(PLRA).  *Id.* at 204.  The Court held, in relevant part, that "[t]here is no question that exhaustion

is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  *Id.* at

211.  Importantly, the Court reached this conclusion without ever labeling this requirement

"jurisdictional," or even considering whether it should be regarded as jurisdictional or not.  *See*

*generally id.* at 211-24.  *See also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (similarly holding

that the PLRA's exhaustion requirement is "mandatory," without labeling it "jurisdictional").

And in a subsequent case, the Court explained that the PLRA's "nonjurisdictional" exhaustion

requirement is nonetheless a "threshold requirement[] that claimants *must* complete, or exhaust,

before filing a lawsuit."  *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 & n.6 (2010)

(emphasis added).  The implication from this line of cases is clear:  nonjurisdictional exhaustion requirements can nonetheless be mandatory, and a failure to exhaust must nonetheless result in dismissal.

Federal appellate courts have reached the same conclusion.  The District of Columbia Circuit recently explained that a statutory provision governing judicial review of Department of Agriculture adjudications, 7 U.S.C. § 6912(e), "imposes a mandatory, but nonjurisdictional exhaustion requirement."  *Fleming v. U.S. Dep't of Agric.*, 987 F.3d 1093, 1099 (D.C. Cir. 2021) (internal quotations omitted).  The Court went on to explain the material differences between jurisdictional and nonjurisdictional yet mandatory exhaustion requirements, concluding that "even nonjurisdictional exhaustion requirements . . . forbid judges from excusing non-exhaustion."  *Id.*  And in the tax law context, multiple courts have held that an exhaustion requirement for challenging the imposition of allegedly wrongful levies, 26 U.S.C. § 7433(d), is simultaneously nonjurisdictional and mandatory.  *See Hassen v. Gov't of Virgin Islands*, 861 F.3d 108, 114 (3d Cir. 2017) (holding that the requirement "is a nonjurisdictional requirement that imposes an obligation a plaintiff must fulfill before filing a suit for damages"); *Hoogerheide v. I.R.S.*, 637 F.3d 634, 639 (6th Cir. 2011) (holding that, although the requirement is "nonjurisdictional," the Court "may [not] excuse this exhaustion requirement on futility grounds" because it "is mandatory.").  Even in *Palladian Partners* itself, the Federal Circuit held that this Court had jurisdiction to review the SBA's NAICS code designation, but that the protestor's complaint should have been dismissed nonetheless for failure to exhaust the SBA's mandatory administrative remedies.  783 F.3d at 1261-62.

This is precisely the category of exhaustion requirements into which 39 C.F.R. § 601.108(h) fits.  The Postal Service's purchasing regulations do not purport to limit this

Court's subject-matter jurisdiction over procurements; indeed, these regulations do not mention the Tucker Act at all.  *See generally* 39 C.F.R. §§ 601.107-108.  At the same time, the Postal Service's exhaustion requirement makes clear that an aggrieved supplier "may seek review [in a Federal court] . . . *only after* the *mandatory* administrative remedies provided under § 601.107 and § 601.108 have been exhausted."  39 C.F.R. § 601.108(h) (emphasis added).  As we explain in our moving papers – and Workhorse does not dispute – this language unambiguously creates a mandatory exhaustion requirement.  Whether jurisdictional or not, the Court must strictly enforce this mandatory requirement here.

### B.   The Postal Service Has The Requisite Authority To Establish An Administrative Process For Resolving Disagreements

Setting aside its misguided argument about the Court's jurisdiction, Workhorse also seems to suggest a broader point:  that the Postal Service lacks any authority to establish an internal administrative process for resolving disagreements.  It explains that Congress "established three separate fora for bid protests" – the Court of Federal Claims, the Government Accountability Office, and the FAA Office of Dispute Resolution – without "direct[ing] USPS to establish its own bid protest forum."  Pl. Opp'n at 16-17, ECF No. 38.  Accordingly, Workhorse argues, the administrative process for resolving disagreements described in 39 C.F.R. §§ 601.107-108 "has no statutory authority, [] is *ultra vires* and invalid."  *Id.* at 18.

As part of the Postal Reorganization Act of 1970 (PRA), Congress expressly authorized the Postal Service to "adopt, amend, and repeal such rules and regulations, not inconsistent with this title, as may be necessary in the execution of its functions . . . ."  39 U.S.C. § 401(2).  This statutory provision plainly confers broad authority to promulgate regulations.  It demonstrates that "the Postal Service has significant governmental powers, consistent with its status as an

5

independent establishment of the Executive Branch," including "the power to make postal regulations." *U.S. Postal Serv. v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736, 741 (2004).  In fact, the Postal Service's power to promulgate regulations is so broad that it can even adopt, by regulation, otherwise inapplicable statutes like the Contract Disputes Act.  *See Anselma Crossing, L.P. v. U.S. Postal Serv.*, 637 F.3d 238, 242-44 (3d Cir. 2011).

So what is the legal standard for assessing regulations promulgated pursuant to such broad statutory authority?  According to the Supreme Court, "[w]here the empowering provision of a statute states simply that the agency may 'make . . . such rules and regulations as may be necessary to carry out the provisions of this Act,' we have held that the validity of a regulation promulgated thereunder will be sustained so long as it is 'reasonably related to the purposes of the enabling legislation.'"  *Mourning v. Fam. Publications Serv., Inc.*, 411 U.S. 356, 369 (1973) (quoting *Thorpe v. Hous. Auth. of City of Durham*, 393 U.S. 268, 280-81 (1969)) (second alteration in original).  "A regulation is reasonably related to the purposes of its statute when the regulation is not inconsistent with the statute and serves to prevent circumvention of that statute."  *Graham Eng'g Corp. v. United States*, 510 F.3d 1385, 1389 (Fed. Cir. 2007).  In other words, so long as the promulgated regulation is "reasonably related to" and "not inconsistent with" the applicable statute, the regulation cannot be deemed to surpass statutory authority.

Workhorse's *ultra vires* analysis thus misstates the applicable legal standard.  It is true, of course, that "Congress did not direct USPS to establish its own bid protest forum."  Pl. Opp'n at 17, ECF No. 38.  But this fact in no way invalidates 39 C.F.R. §§ 601.107-108.  Congress designated the Postal Service as "an independent establishment of the executive branch of the Government of the United States."  39 U.S.C. § 201.  It then gave the Postal Service substantial autonomy in the procurement arena, including a broad mandate to enter into contracts "as it

6

deems necessary," *id.* at § 2008(c), and independence from most procurement laws of general

applicability, *id.* at § 410(a).  By design, the Postal Service was created with autonomy and

contracting flexibility in mind.  *See also Franchise Tax Bd. of Cal. v. U.S. Postal Serv.*, 467 U.S.

512, 520 (1984) ("Congress [] indicated that it wished the Postal Service to be run more like a

business than had its predecessor, the Post Office Department.").

In light of this statutory scheme, the Postal Service decided to establish a mandatory,

two-step administrative process for resolving disagreements between the Postal Service and

actual or prospective offerors.  The Postal Service's reasons for establishing this process – such

as the expeditious resolution of disagreements, the reduction of litigation expenses for everyone

involved, and the facilitation of successful business relationships with suppliers, *see* 39 C.F.R.

§ 601.108(b) – promote its role as a uniquely independent and flexible establishment.  There is

no inconsistency between this administrative process and any provision of the PRA.  Under the

correct standard, the Postal Service's administrative process is not *ultra vires*.

        **C.**    **Ultimately, Workhorse Cannot Escape The Unequivocal And Directly
Applicable Holdings Of *Palladian Partners***

"Where a regulation requires exhaustion, a party's failure to exhaust administrative

remedies precludes judicial review of its claim."  *Palladian Partners*, 783 F.3d at 1255.

Workhorse does not dispute that the Postal Service's purchasing regulations plainly require

exhaustion of administrative remedies; nor does it dispute its failure to exhaust these remedies

here.  *See generally* Pl. Opp'n, ECF No. 38.  This simple application of binding law to

undisputed allegations of fact should lead to the dismissal of Workhorse's complaint.

Recognizing that *Palladian Partners* is fatal to its protest, Workhorse endeavors to

distinguish this case on several grounds.  As we explain below, none of these grounds offer a

compelling reason to discount *Palladian Partners* or reach a conclusion inconsistent with its holdings.

*First*, Workhorse notes a distinction between "size protests," like the one at issue in *Palladian Partners*, and "bid protests," like the one filed here.  *See* Pl. Opp'n at 12-13, ECF No. 38.  But this distinction only matters for determining which protestors have an obligation to comply with the *SBA's* exhaustion requirement.  In *Harmonia Holdings Grp., LLC v. United States*, 999 F.3d 1397 (Fed. Cir. 2021), a protestor challenged an agency action, rather than an SBA size determination.  *See id.* at 1403-04.  Because the SBA's size determination was not directly at issue, the Federal Circuit held that the protestor was not required to comply with the SBA's exhaustion requirement.  *See id.*

The distinction between "size protests" and "bid protests" has no relevance whatsoever to this case.  Unlike *Harmonia Holdings*, we do not suggest that Workhorse had an obligation to comply with the SBA's exhaustion requirement.  And the exhaustion requirement actually at issue here – the Postal Service's exhaustion requirement – indisputably applies to the NGDV procurement.  The Court must determine the consequences of Workhorse's failure to comply with this requirement.[2]

*Second*, Workhorse argues that *Palladian Partners* only addressed protestors' obligation to comply with the SBA's specific exhaustion requirement, and that any statements of more

---

[2] Workhorse also cites *Hawpe Construction, Inc. v. United States*, 46 Fed. Cl. 571 (2000), for the proposition that protestors filing suit pursuant to the Court's bid protest jurisdiction need not exhaust administrative remedies.  *See* Pl. Opp'n at 13, ECF No. 38.  But *Hawpe* is a non-binding trial court ruling decided 15 years before *Palladian Partners*.  To the extent it is at all relevant to the issues in this case, *Hawpe*'s holdings have been abrogated by subsequent binding authority.

general applicability are nothing more than *dicta*.  *See* Pl. Opp'n at 13, ECF No. 38.  Not so.

"*[D]icta* in the classic sense" is "sheer speculation about what would happen in cases not before

the court."  *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 125 (1996) (Souter, J., dissenting).

But in announcing that "a party's failure to exhaust administrative remedies precludes judicial

review of its claim," *Palladian Partners*, 783 F.3d at 1255, the Federal Circuit was not

speculating about a different case; it was opining on a protestor's obligation to exhaust

applicable administrative remedies, which was the very issue before the Court.  Rather than

*dicta*, this sentence was *Palladian Partners*' central holding.

   And even if this statement could be characterized as *dicta* (which it is not), this Court, as

an inferior court, must still follow the Federal Circuit's explicit and carefully considered

guidance.  *See Stone Container Corp. v. United States*, 229 F.3d 1345, 1349-50 (Fed. Cir. 2000)

(explaining that the Federal Circuit, as "a subordinate federal court" to the Supreme Court, may

not disregard the Supreme Court's "explicit and carefully considered" statements, even if such

statements constitute *dicta*).  In fact, the Federal Circuit has explained that the ordinary rule that

"a trial court may not disregard its reviewing court's precedent" has only "two narrow

exceptions: if the circuit's precedent is expressly overruled by statute or by a subsequent

Supreme Court decision."  *Strickland v. United States*, 423 F.3d 1335, 1338 n.3 (Fed. Cir. 2005)

(internal citations omitted).  Neither of these exceptions applies here.  Workhorse cannot

overcome the binding holding of *Palladian Partners* by calling it "*dicta*" while ignoring its

teachings.[3]

---

[3] For the same reasons, Workhorse's attempt to discount *Neely v. United States*, 285 F.2d
438 (Ct. Cl. 1961), as mere *dicta* is likewise unavailing.

*Third*, Workhorse posits that unlike the Postal Service, the SBA had good reason to create an exhaustion requirement because size determinations require specialized expertise. *See* Pl. Opp'n at 14, ECF No. 38. This argument is both incorrect and irrelevant. Much of the procurement process is highly technical[4] and discretionary,[5] and agencies are in the best position to determine, in the first instance, whether they exercised their judgment properly. And in any event, the PRA authorizes the Postal Service to promulgate regulations – including regulations that establish a mandatory administrative process for resolving disagreements – without regard for the need to exercise specialized expertise. *See* 39 U.S.C. § 401(2). Whatever rationale the SBA had for creating a mandatory exhaustion requirement, it cannot diminish the Postal Service's ability to create its own regulatory scheme.

Workhorse also argues that the remaining Federal Circuit precedents we cite – *Corus Staal BV v. United States*, 502 F.3d 1370 (Fed. Cir. 2007), and *Sandvik Steel Co. v. United States*, 164 F.3d 596 (Fed. Cir. 1998) – do not support the conclusion that an agency can create mandatory exhaustion requirements by regulation. *See* Pl. Opp'n at 14-15, ECF No. 38. While we interpret these cases differently, they admittedly send some mixed signals on this point.

---

[4] *See Beta Analytics Int'l, Inc. v. United States*, 67 Fed. Cl. 384, 395 (2005) ("The evaluation of proposals for their technical excellence or quality is a process that often requires the special expertise of procurement officials"). *See also* Pl. Opp'n at Ex. 1, ECF No. 38-1 (noting that NGDV offerors were evaluated in part on their design quality and technical approach, and discussing several technical aspects of offerors' proposals, including safety and ergonomics, reliability of components, and supplier capability).

[5] *See Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) ("contracting officers are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process." (internal quotations omitted)); *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996) ("Procurement officials have substantial discretion to determine which proposal represents the best value for the government.").

10

*Compare Corus Staal*, 502 F.3d at 1379 ("The exhaustion requirement in this context is therefore not simply a creature of court decision, as is sometimes the case, but is a requirement explicitly imposed by the agency as a prerequisite to judicial review") *with id.* at 1381 ("Where the issue of exhaustion of administrative remedies is not governed by a particular statutory provision or an overall statutory scheme, the decision whether to require exhaustion in a particular case is a matter committed to the discretion of the trial court").  But *Palladian Partners*, which postdates both cases, is unequivocal.  *See* 783 F.3d at 1255 ("Where a regulation requires exhaustion, a party's failure to exhaust administrative remedies precludes judicial review of its claim."); *id.* at 1258-61 (distinguishing the mandatory exhaustion requirement at issue from the discretionary exhaustion requirement in *McKart v. United States*, 395 U.S. 185 (1969)).  It is also the most analogous to this case, as it deals with exhaustion requirements within the procurement context. The Court must follow *Palladian Partners* here.

*          *          *

It is a "well-known principle" that "the Court of Federal Claims must follow relevant decisions of the Supreme Court and the Federal Circuit, not the other way around."  *Dellew Corp. v. United States*, 855 F.3d 1375, 1382 (Fed. Cir. 2017).  As we explain in our moving papers and again here, *Palladian Partners* is not only relevant to the issues the Court must consider, but it is factually and legally indistinguishable.  The Court should apply this controlling precedent, and dismiss Workhorse's complaint for failure to exhaust the Postal Service's mandatory exhaustion requirement.

11

## II. Even If The Postal Service's Exhaustion Requirement Was Prudential, Workhorse Offers No Compelling Reason For Excusing Its Failure To Exhaust Administrative Remedies

As an alternative to our primary argument that the Court must strictly enforce the mandatory exhaustion requirement in 39 C.F.R. § 601.108(h), we establish in our moving papers that dismissal is appropriate even if the Court views this provision as prudential.  As we explain there, prudential exhaustion serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency, both of which counsel in favor of dismissal.  *See* Def. Mot. at 14-16, ECF No. 29 (citing *McCarthy v. Madigan*, 503 U.S. 140 (1992)).  And the few limited reasons for excusing a party's failure to exhaust a prudential requirement – undue prejudice, an inadequate administrative remedy, and bias – do not apply here.  *See id.* at 16-17.

In response, Workhorse argues only that lodging a disagreement with the SDR Official would have been futile.[6]  It asserts that "there was no reasonable prospect that USPS would have changed its position at the next level of administrative review," and that any suggestion to the contrary is "fanciful."  Pl. Opp'n at 20, ECF No. 38.  According to Workhorse, the comprehensive nature of the contracting officer's response letter, coupled with the SDR

---

[6] Workhorse also claims that "review of a bid protest does not implicate USPS's unique expertise," Pl. Opp'n at 21, ECF No. 38, though it is not entirely clear how this assertion fits within the legal framework for prudential exhaustion. In determining whether an exhaustion requirement supports "administrative agency authority," the focus of the inquiry is the underlying agency action under review, not the review process itself.  *See McCarthy*, 503 U.S. at 145 ("Exhaustion concerns apply with particular force when the action under review involves exercise of the agency's discretionary power").  Workhorse readily acknowledges that "USPS has discretion in procurement decisions."  Pl. Opp'n at 21, ECF No. 38.  And as explained previously, it cannot be seriously disputed that reviewing proposals for the NGDV procurement required technical expertise.  *See generally* Pl. Opp'n at Ex. 1, ECF No. 38-1.  Such discretion and expertise in the underlying procurement decision are precisely the type of "administrative agency authority" that prudential exhaustion requirements seek to protect.

Official's purported lack of independence, conclusively demonstrate the futility of further administrative review. *Id.* at 20-22. *See also id.* at 2 (characterizing review by the SDR Official as "another instance of USPS reviewing its own work and rubber stamping its award decision.").

Neither of Workhorse's arguments is persuasive. The contracting officer prepared a detailed response letter because the applicable regulations require her to do so. *See* 39 C.F.R. § 601.107(b). And the suggestion that the SDR Official merely "rubber stamps" the contracting officer's initial resolution has no basis in law or fact. The SDR Official must conduct his review by performing an independent, *de novo* investigation of the Postal Service's procurement decision, which may entail obtaining written materials and meeting with relevant individuals. *See* 39 C.F.R. § 601.108(e). If this investigation leads the SDR Official to a different conclusion than the one reached by the contracting officer, then the SDR Official is authorized to take a broad range of remedial actions, including termination of the award. *See id.* at § 601.108(g). The SDR Official has not been shy about exercising this authority when circumstances justify it. In fact, in the past several years alone, the SDR Official has overruled the contracting officer's initial resolution on multiple occasions. *See, e.g., Noble Sales Co.*, Resolution No. SDR-20-MO-009 (Dec. 8, 2020), https://about.usps.com/suppliers/disagreement-decisions/sdr-20-mo-009.pdf; *Rizzo, Inc.*, Resolution No. SDR-19-VDIE-02 (Sep. 11, 2019), https://about.usps.com/suppliers/disagreement-decisions/sdr19vdie-02.pdf; *Alan Ritchey, Inc.*, Resolution No. SDR-17-MO-06 (June 20, 2017), https://about.usps.com/suppliers/disagreement-decisions/SDR-17MO-06.pdf.

At most, Workhorse's futility argument boils down to a realization that the SDR Official was unlikely to overturn the contracting officer's reasoned and thorough decision. Unlikelihood, however, does not equate futility. According to the Federal Circuit, the "narrow" futility exception may only apply when "parties would be required to go through obviously useless

13

motions in order to preserve their rights." *Corus Staal*, 502 F.3d at 1379 (internal quotations omitted). "The mere fact that an adverse decision may have been likely does not excuse a party from a statutory or regulatory requirement that it exhaust administrative remedies." *Id. See also Palladian Partners*, 783 F.3d at 1256 n.3. Stated differently, futility requires the plaintiff to demonstrate that, for one reason or another, it had no chance whatsoever of obtaining effective relief from the available administrative remedy. *See also Tesoro Ref. & Mktg. Co. v. F.E.R.C.*, 552 F.3d 868, 874 (D.C. Cir. 2009) ("even if one were to concede that an unfavorable decision was *highly likely*, that does not satisfy our strict futility standard requiring a *certainty* of an adverse decision." (cleaned up, emphasis in original)).

*Itochu Building Products v. United States*, 733 F.3d 1140 (Fed. Cir. 2013), on which Workhorse primarily relies, is consistent with this standard. There, the Court excused a plaintiff's failure to seek administrative review of an effective-date determination by the Department of Commerce. *See id.* at 1142. In concluding that further administrative review would have been futile, the Court emphasized Commerce's categorical stance at the time, *id.* at 1146-47, according to which Commerce was "constrained by statute to reject Itochu's position," *id.* at 1148. Itochu could not have raised "any new factual or legal argument[s] . . . that might have affected Commerce's position, aided judicial review, or given Itochu the relief it sought." *Id.* The plaintiff thus had no chance whatsoever of obtaining effective relief from the agency, making further administrative review truly futile.

Workhorse has not made a similar showing. The SDR Official has an obligation to independently investigate Workhorse's allegations, and both the authority and discretion to grant effective relief. He also has a demonstrated track record of providing just such relief, to suppliers just like Workhorse, when appropriate. Had Workhorse made a compelling case that

14

the contracting officer erroneously denied the disagreement at step one of the administrative process, nothing prevented the SDR Official from overruling the contracting officer's initial resolution.  Indeed, the Court must presume that, as a Government official, the SDR Official would have "properly discharged [his] official duties" under such circumstance.  *Cleveland Assets, LLC v. United States*, 883 F.3d 1378, 1382 (Fed. Cir. 2018).  Lodging a disagreement with the SDR Official was in no way futile.

And because Workhorse has not raised – and therefore waived – any other grounds for excusing its failure to exhaust applicable administrative remedies, its efforts to construe 39 C.F.R. § 601.108(h) as prudential are ultimately unavailing.  Whether this requirement is mandatory or prudential, dismissal for failure to exhaust remains the appropriate result.

### III.    Workhorse Has Forfeited Its Appointments Clause Challenge

Relying on *United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021), Workhorse next argues that the SDR Official's role within the Postal Service's procurement hierarchy violates the Constitution's Appointments Clause.  *See* Pl. Opp'n at 23-24, ECF No. 38.  The Court may not address the merits of this argument, however, because Workhorse has forfeited it here.

"No procedural principle is more familiar to this Court than that a constitutional right may be forfeited . . . by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *Yakus v. United States*, 321 U.S. 414, 444 (1944).  "Courts may for that reason refuse to consider a constitutional objection even though a like objection had previously been sustained in a case in which it was properly taken." *Id.*  This principle holds true for Appointments Clause challenges, which may be forfeited if a party fails to raise them when appropriate.  *See Freytag v. Comm'r*, 501 U.S. 868, 893 (1991) (Scalia, J., concurring in part and concurring in the judgment) ("Appointments Clause claims, and other structural constitutional

15

claims, have no special entitlement to review."); *Gonnella v. U.S. Sec. & Exch. Comm'n*, 954
F.3d 536, 543 (2d Cir. 2020); *N.L.R.B. v. RELCO Locomotives, Inc.*, 734 F.3d 764, 798 (8th Cir.
2013) ("Constitutional considerations, no matter how important or 'fundamental,' can be
forfeited").

      As a general matter, "no one is entitled to judicial relief for a supposed or threatened
injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem
Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938).  This is so because "orderly procedure and good
administration require that objections to the proceedings of an administrative agency be made
while it has opportunity for correction in order to raise issues reviewable by the courts." *United
States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952).  "[C]ourts should not topple over
administrative decisions unless the administrative body not only has erred but has erred against
objection made at the time appropriate under its practice." *Id.*

      Based on these principles, a failure to exhaust available administrative remedies
precludes judicial review of substantive arguments challenging those same remedies, including
arguments alleging an Appointments Clause violation.  In *Malouf v. Securities and Exchange
Commission*, 933 F.3d 1248 (10th Cir. 2019), for instance, the Tenth Circuit held that a litigant
forfeited an Appointments Clause challenge made for the first time in court, explaining that
"[f]ailure to comply with a mandatory exhaustion requirement prevents judicial review of the
issue." *Id.* at 1256 (citing *L.A. Tucker Truck Lines*).  Other appellate courts have reached similar
conclusions.  *See, e.g., Gonnella*, 954 F.3d at 544 (holding that "a litigant who does not object to
the constitutionality of an ALJ at any point during the SEC proceedings forfeits that challenge.");
*RELCO Locomotives*, 734 F.3d at 796 (rejecting an Appointments Clause challenge as waived

16

because "[t]he waiver doctrine requires a party to make each argument it wishes to preserve for appeal in a timely fashion before the original decisionmaker.").

Workhorse has admittedly failed to lodge a disagreement with the SDR Official, as required by the Postal Service's purchasing regulations.  This means that Workhorse has deprived the Postal Service of the opportunity to address its Appointments Clause challenge in the first instance.  Workhorse cannot circumvent this mandatory administrative process by raising a novel argument before this Court.  *See Myers*, 303 U.S. at 50-51; *L.A. Tucker Truck Lines*, 344 U.S. at 37; *Malouf*, 933 F.3d at 1256.  By failing to exhaust its administrative remedies, and therefore failing to raise its Appointments Clause challenge before the Postal Service, Workhorse has forfeited the argument.

In addition, we note the lack of an adequate opportunity to fully address this issue. Workhorse could have given the Government more time to evaluate its Appointments Clause challenge, either by presenting it to the Postal Service as part of the administrative process, or, at the very least, alleging it in its complaint.  But Workhorse did neither.  *See generally* Pl. Compl., ECF No. 1.  It also did not mention this as a possible argument during the telephonic status conference the Court held on June 17, 2021.  Instead, it raised the argument for the first time in response to a motion to dismiss, knowing that the Government had only one week to address the issue.  *See* Sched. Order, ECF No. 15.  And while Workhorse did not oppose a short, one-week extension for filing the Government's reply brief, *see* July 26, 2021 Order, ECF No. 41, two weeks is not a sufficient time to consider an issue as nuanced as this one.  This is an independent reason for rejecting Workhorse's argument at this late stage.  *Cf. L.A. Tucker Truck Lines*, 344 U.S. at 36 (rejecting a challenge to the appointment of an examiner in part because "[t]he issue is

17

clearly an afterthought, brought forward at the last possible moment to undo the administrative proceedings.").[7]

### IV.    Dismissal Is The Only Result Supported By Applicable Law

In the concluding paragraph of its opposition brief, without offering any argument or citing any legal authority, Workhorse asks the Court to do something extraordinary:  even if the Court determines that Workhorse failed to exhaust valid and enforceable administrative remedies, the Court "should remand this matter to USPS for the SDRO to consider [Workhorse's] bid protest."  Pl. Opp'n at 24, ECF No. 38.  Never mind that the applicable regulation establishes a strict 10-day time limit for lodging disagreements with the SDR Official, *see* 39 C.F.R. § 601.108(d)(3), or that this time limit expired long ago.  The way Workhorse sees it, not only is the Postal Service's exhaustion requirement amenable to judge-made exceptions, but it is open to wholesale judge-made revisions as well.

In *Woodford v. Ngo*, 548 U.S. 81 (2006), another PLRA case, the Supreme Court explained that "[b]ecause exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims."  *Id.* at 90.  "Administrative law does this by requiring proper exhaustion of administrative remedies."  *Id.*  Such "proper exhaustion," in turn, "demands compliance with an

---

[7] Because Workhorse clearly forfeited its Appointments Clause argument, and because the argument is no more than a last-minute "afterthought," we believe that a substantive response is unnecessary.  If the Court nonetheless wishes to delve into the merits of this issue, we respectfully request 30 additional days to consult the Postal Service and other Department of Justice components, and prepare a comprehensive response, consistent with the Government's position in other Appointments Clause cases.

agency's deadlines and other critical procedural rules[,] because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.  If compliance with deadlines and procedural rules became optional, then administrative exhaustion schemes would be "wholly ineffective" and "toothless," thus undercutting the very reason for having an exhaustion requirement in the first place.  *Id.* at 95.

If the Court determines, as it should, that Workhorse had an obligation to lodge a disagreement with the SDR Official pursuant to 39 C.F.R. § 601.108, then it must also determine that Workhorse had an unwavering obligation to do so within the time prescribed by the Postal Service's purchasing regulations.  Under the principles of "proper exhaustion," Workhorse's failure to comply with this deadline is fatal to its protest.  Remand to the agency is not an available remedy in this case.

## **CONCLUSION**

For these reasons, and for the reasons stated in our moving papers, we respectfully request that the Court dismiss the complaint for failure to exhaust administrative remedies.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

MARTIN F. HOCKEY, JR.
Acting Director

/s/ Douglas K. Mickle
DOUGLAS K. MICKLE
Assistant Director

OF COUNSEL:                          /s/ Borislav Kushnir
                                     BORISLAV KUSHNIR
MICHELLE A. WINDMUELLER              Trial Attorney
MICHAEL F. KIELY                     Commercial Litigation Branch
ROBERT J. DIETZ                      Civil Division
Attorneys                            U.S. Department of Justice
United States Postal Service         P.O. Box 480
                                     Ben Franklin Station
                                     Washington, DC 20044
                                     Telephone: (202) 307-5928
                                     Facsimile: (202) 353-0461
                                     Email: Steven.Kushnir@usdoj.gov

August 3, 2021                       Attorneys for Defendant

20