## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### Bid Protest

WORKHORSE GROUP, INC. )

Plaintiff, )

v. )

THE UNITED STATES, )

Defendant, )

and )

OSHKOSH DEFENSE, LLC, )

Defendant-Intervenor. )

**Final Redacted Version**

Case No. 21-1484 C

Judge Zachary N. Somers

---

### DEFENDANT-INTERVENOR OSHKOSH DEFENSE, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

August 3, 2021

Scott Arnold
**BLANK ROME LLP**
1825 Eye Street, NW
Washington, D.C. 20006
T: (202) 420-4736
F: (202) 379-9274
E: Sarnold@blankrome.com
*Counsel for Oshkosh Defense, LLC*

Of Counsel:
Justin A. Chiarodo
Stephanie M. Harden
Robyn N. Burrows
Michael J. Montalbano
BLANK ROME LLP
1825 Eye Street, NW
Washington, D.C. 20006

# TABLE OF CONTENTS

**Page**

I.   Introduction ........................................................................................................1

II.  The USPS's Exhaustion Requirements Are Valid and Require Dismissal of
     Workhorse's Complaint Under Palladian Partners ...............................................3

     A.   Congress's Broad Delegation of Authority To USPS Supports the Position
          that the USPS's Limited Exhaustion Requirement Is Jurisdictional ......................3

     B.   The Federal Circuit's Holding in Palladian Partners Requires the Court To
          Dismiss Workhorse's Complaint ............................................................7

III. The USPS Appeal Procedures Are Mandatory, and the Narrowly Applied Futility
     Exception Does Not Apply Here ......................................................................10

IV.  The USPS's Disagreement Process Does Not Violate the Appointments Clause ............14

V.   CONCLUSION ...............................................................................................20

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Barnard v. Ashley*,
    59 U.S. 43 (1855)............................................................................................................19

*Biofora v. United States*,
    773 F.3d 1326 (Fed. Cir. 2014)......................................................................................11

*Chevron, U.S.A. Inc. v. Natural Res. Def. Council, Inc.*,
    467 U.S. 837 (1984)..........................................................................................................4

*Coit Indep. Joint Venture v. Fed. Sav. & Loan Ins. Corp.*,
    489 U.S. 561 (1989)..........................................................................................................4

*Corus Staal BV v. United States*,
    502 F.3d 1370 (Fed. Cir. 2007)..................................................................10, 11, 12, 13

*CW Gov't Travel, Inc. v. United States*,
    61 Fed. Cl. 559 (2004) ......................................................................................................6

*Edmond v. United States*,
    520 U.S. 651 (1997)..................................................................................................16, 17

*Emery Worldwide Airlines, Inc. v. United States*,
    264 F.3d 1071 (Fed. Cir. 2001)........................................................................................6

*Fort Bend County, Texas v. Davis*,
    139 S. Ct. 1843 (2019).....................................................................................................10

*Free Enter. Fund v. Public Co. Acct. Oversight Bd.*,
    561 U.S. 447 (2010)..................................................................................................15, 17

*Grumman Data Sys. Corp. v. Widnall*,
    15 F.3d 1044 (Fed. Cir. 1994).........................................................................................12

*Harmonica Holdings Group, LLC v. United States*,
    999 F.3d 1397 (Fed. Cir. 2021).........................................................................................9

*In re Grand Jury Investigation*,
    315 F. Supp. 3d 602 (D.D.C. 2018)..........................................................................17, 18

*Itochu Bldg. Prods. v. United States*,
    733 F.3d 1140 (Fed. Cir. 2019)..............................................................................12, 13, 14

*Mittal Steel Point Lisas Ltd. v. United States*,
  548 F.3d 1375 (Fed. Cir. 2008)..................................................................10

*Nat'l Telecomm., Inc. v. United States*,
  123 Fed. Cl. 595 (2015) ..............................................................................6

*Palladian Partners, Inc. v. United States*,
  783 F.2d 1243 (Fed. Cir. 2015)..................................................................14

*Palladian Partners, Inc. v. United States*,
  783 F.3d 1243 (Fed. Cir. 2015)........................................................ *passim*

*Patsy v. Florida Board of Regents*,
  457 U.S. 496 (1982)................................................................................4, 5

*Sandvik Steel Co. v. United States*,
  164 F.3d 596 (Fed. Cir. 1998)......................................................................3

*Sebelius v. Auburn Reg. Med. Ctr.*,
  568 U.S. 145 (2013)......................................................................................4

*United States v. Arthrex, Inc.*,
  141 S. Ct. 1970 (2021)....................................................................... *passim*

*United States v. Concord Mgmt. & Consulting LLC*,
  317 F. Supp. 3d 598 (D.D.C. 2018)............................................................18

**Statutes**

28 U.S.C. § 1491(b) ............................................................................................5

31 U.S.C. §§ 3551-57 .........................................................................................5

35 U.S.C. § 141(c) ............................................................................................18

39 U.S.C. § 201 ...............................................................................................4, 5

39 U.S.C. § 202(a)(1) ........................................................................................15

39 U.S.C. § 401(2) .........................................................................................5, 18

39 U.S.C. § 401(3) ..............................................................................................5

39 U.S.C. § 401(8) ..............................................................................................5

39 U.S.C. § 401(10) ............................................................................................5

39 U.S.C. § 402 ................................................................................................16

39 U.S.C. § 410(a) ...................................................................................................5, 6

Tucker Act ......................................................................................................................8

**Other Authorities**

4 C.F.R. § 21(2)(a)(3) ....................................................................................................6

4 C.F.R. § 21.2(a)(2) ......................................................................................................6

39 C.F.R. § 222.1(a) ......................................................................................................19

39 C.F.R. § 601.104 ...............................................................................................19, 20

39 C.F.R. § 601.107 ......................................................................................................19

39 C.F.R §§ 601.107-601.108 .................................................................................5, 9

39 C.F.R. § 601.107(a)(5) .....................................................................................16, 18

39 C.F.R. § 601.108 .......................................................................................17, 18, 19

39 C.F.R. § 601.108(e) .................................................................................16, 19, 20

39 C.F.R. § 601.108(g) .................................................................................................19

39 C.F.R. § 601.108(h) .................................................................................................15

75 Fed. Reg. 1542 (Jan. 12, 2010) (codified at 39 C.F.R. pt. 601) ...........................17

RCFC 12(b)(1) .................................................................................................................1

RCFC 12(b)(6) .................................................................................................................1

U.S. Const. art. II, §2 ....................................................................................................15

U.S. Constitution Appointments Clause .............................................................. *passim*

Pursuant to the Court's July 26, 2021 Order (Dkt. No. 41), and Rules 12(b)(1) and (6) of the Rules of the Court of Federal Claims ("RCFC"), Defendant-Intervenor Oshkosh Defense, LLC ("Oshkosh"), respectfully submits this Reply in Support of its Motion To Dismiss, and requests that this Court dismiss Plaintiff Workhorse Group, Inc.'s ("Workhorse") Complaint in its entirety because Workhorse failed to exhaust its administrative remedies with the United States Postal Service ("USPS").

## I.    Introduction

Workhorse frames the exhaustion requirement as a jurisdictional-or-nothing situation, arguing that if the Court does not find the requirement to be jurisdictional, then the protest must proceed to the merits. This is not true. Regardless of how the USPS's exhaustion requirement is framed (jurisdictional or non-jurisdictional), the Court must dismiss Workhorse's Complaint.

If the Court finds that the USPS's exhaustion requirement is jurisdictional, then the Court is required to dismiss Workhorse's Complaint. In this regard, there is ample evidence that the USPS's exhaustion requirement is jurisdictional. The Supreme Court has made clear that Congress need not expressly authorize an agency to promulgate jurisdictional exhaustion requirements. Congress's broad delegation of rulemaking authority can provide a sufficient basis for an agency to issue limited jurisdictional requirements. That is the situation here. Congress clearly intended that the USPS function as an independent organization, exempt from nearly all federal procurement laws, and with the authority to regulate its own affairs without having to abide by the same statutory and regulatory requirements that apply to most federal agencies. Such broad authority demonstrates Congress's intent to allow the USPS to place limited restrictions on this Court's jurisdiction, requiring would-be protesters to participate in a short (approximately 60 days) disagreement process before going to Court.

If the Court finds that the USPS's exhaustion requirement is not jurisdictional, then the Court still must dismiss Workhorse's Complaint. The Supreme Court has clearly held that even non-jurisdictional, pre-litigation requirements are mandatory if their language so states. While there are some narrow, limited exceptions, Workhorse has come nowhere near meeting any of them. Indeed, Workhorse has yet to explain why, after receiving the contracting officer's response to the disagreement letter, it skipped the USPS's short (approximately 30 days), second-level disagreement process, waited almost three additional months, and then filed a protest at the Court. Workhorse has deprived the USPS of the opportunity to fully address Workhorse's claims, deprived the Court of a complete administrative record and final agency decision, and should, therefore, not be rewarded with the opportunity to litigate this protest.

Finally, in a last-ditch effort to save its protest, Workhorse introduces a novel argument, claiming that the USPS's disagreement process violates the Appointments Clause of the U.S. Constitution. This argument is flawed on multiple levels. First, even if Workhorse is correct, Workhorse would only be entitled to an additional level of review above the Supplier Disagreement Resolution ("SDR") Official. This does not solve Workhorse's fundamental problem, which is that it failed to seek review at the SDR Official level in the first place as required by USPS regulations. Workhorse's argument also fails on the merits because USPS's structure and regulations ensure that the SDR Official is sufficiently supervised by principal officers, and, to the extent the SDR Official's decisions are final, they are only final because the Postmaster General ("PMG") and Board of Governors allow them to be final.

By filing this protest, Workhorse is telling the Court and the parties that the normal rules do not apply to Workhorse. This is wrong. Workhorse, like any other company that wants to do business with the USPS, is required to complete the USPS's mandatory disagreement process

before going to Court. Workhorse failed to do so here, and the Court should, therefore, dismiss its Complaint with prejudice.

## II. The USPS's Exhaustion Requirements Are Valid and Require Dismissal of Workhorse's Complaint Under *Palladian Partners*

### A. Congress's Broad Delegation of Authority To USPS Supports the Position that the USPS's Limited Exhaustion Requirement Is Jurisdictional

As explained in § III, *infra*, the Court need not find that the USPS's exhaustion requirement is jurisdictional to dismiss this case. However, there is ample support that the requirement is jurisdictional. Workhorse's failure to meet the jurisdictional pre-requisites by completing USPS's disagreement process divests the Court of jurisdiction to hear this case, and requires immediate dismissal.

It is well established that agencies can restrict the Court's jurisdiction through regulatory exhaustion requirements. This very issue was addressed in *Sandvik Steel Co. v. United States*, 164 F.3d 596 (Fed. Cir. 1998), where the Federal Circuit upheld regulations issued by the Department of Commerce that limited the jurisdiction of the Court of International Trade by requiring would-be plaintiffs to exhaust their administrative remedies before going to the court. 164 F.3d at 600 ("The fact that the administrative remedy was provided by a regulation rather than by a statute does not make the exhaustion doctrine inapplicable or inappropriate."). The Federal Circuit reached the same conclusion in *Palladian Partners, Inc. v. United States*, 783 F.3d 1243 (Fed. Cir. 2015) in which it held that "[w]here a regulation requires exhaustion, a party's failure to exhaust administrative remedies precludes judicial review of its claim." 783 F.3d at 1255.

Workhorse does not dispute that regulations can properly limit the Court's jurisdiction, but instead claims that Congress did not authorize USPS to promulgate exhaustion requirements.

*See* Dkt. No. 38 at 9-11, 16-18.  Workhorse's claim is wrong.  Supreme Court precedent is clear that a regulation imposing jurisdictional exhaustion requirements does not require the express approval of Congress.  Rather, "where the statutory requirement of exhaustion is not explicit, courts are guided by congressional intent in determining whether application of the doctrine would be consistent with the statutory scheme."  *Patsy v. Florida Board of Regents*, 457 U.S. 496, 502, n.4 (1982).  In this regard, Congress's broad delegation of rulemaking authority can be sufficient evidence of Congress's intent to allow an agency to promulgate regulations that limit the Court's jurisdiction so long as they are reasonable and consistent with Congress's intent.  *See Coit Indep. Joint Venture v. Fed. Sav. & Loan Ins. Corp.*, 489 U.S. 561, 584 (1989) (finding that agency could have imposed limited exhaustion requirements given Congress's broad delegation of rulemaking authority).[1]  Thus, where "Congress has specifically delegated rulemaking authority to an agency, courts 'lack[] authority to undermine the regime established . . . unless [the] regulation is 'arbitrary, capricious, or manifestly contrary to the statute.'"  *Palladian*, 783 F.3d at 1258 (quoting *Sebelius v. Auburn Reg. Med. Ctr.*, 568 U.S. 145 (2013) (quoting *Chevron, U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)).

As an initial matter, the USPS is distinct from other federal agencies in that it was established "as an independent establishment of the executive branch of the Government of the United States."  39 U.S.C. § 201.  This independence is exemplified by the fact that Congress

---

[1] In *Coit Independence*, the Supreme Court ultimately found that the agency's exhaustion regulations imposed requirements that exceeded what Congress authorized.  489 U.S. at 584-85. However, the Court made clear that Congress's broad delegation of authority to the agency fully supported limited exhaustion requirements as is the case here.  *Id.* at 584 ("If the Bank Board's regulations only required claimants to give FSLIC notice of their claims and then to wait for a reasonable period of time before filing suit while FSLIC decided whether to pay, settle, or disallow the claim, we have no doubt that such regulations would be a reasonable exercise of the Bank Board's broad rulemaking power . . . .").

gave the USPS significant flexibility regarding how it procures property and services by exempting USPS from "Federal law dealing with public or Federal contracts." 39 U.S.C. § 410(a). Congress also gave the USPS broad authority over its own affairs, including the authority to "enter into and perform contracts," "to settle and compromise claims by or against it," and "to have all other powers incidental, necessary, or appropriate to the carrying on of its functions or the exercise of its specific powers." 39 U.S.C. §§ 401(3), (8), (10). To implement these powers, Congress authorized the USPS "to adopt, amend, and repeal such rules and regulations, not inconsistent with this title, as may be necessary in the execution of its functions under this title and such other functions as may be assigned to the Postal Service under any provisions of law outside of this title." § 401(2). What these broad delegations of authority show is that Congress intended the USPS to operate independently and outside of the normal strictures of federal procurement law. *See* 39 U.S.C. § 410(a); *see also* 39 U.S.C. § 201. The USPS's short disagreement process, which typically lasts approximately 60 days and does not restrict what alleged violations the Court ultimately may review, 39 C.F.R §§ 601.107-601.108, is certainly within the scope of the powers Congress granted to the USPS. *See Patsy v. Florida Board of Regents*, 457 U.S. 496, 502, n.4 (1982).

Moreover, the protest process Congress put in place for the USPS provides further support that the USPS may implement limited exhaustion requirements. For most federal agencies, a disappointed offeror can file a bid protest in two external forums: the Government Accountability Office ("GAO") and the Court of Federal Claims. *See* 31 U.S.C. §§ 3551-57; 28 U.S.C. § 1491(b). The USPS, however, is different because Congress exempted it from GAO's jurisdiction, requiring would-be protesters to file suit, after they have satisfied the USPS's

exhaustion requirements, at the Court of Federal Claims.  *See* 39 U.S.C. § 410(a); *see also Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1083 (Fed. Cir. 2001).

Congress's decision to exempt the USPS from GAO's jurisdiction, but not the Court's, is further evidence of Congress's intent to allow the USPS to implement limited exhaustion requirements.  GAO has strict timeliness rules that would make an exhaustion requirement unworkable because the deadline for filing a protest at GAO would pass before a disappointed offeror could satisfy an agency's requirements.[2]  *See* 4 C.F.R. § 21.2(a)(2) (requiring that protests be filed within 10 days after the date of the debriefing or when the alleged impropriety was known or should have been known).  In contrast, there is no set deadline for filing a bid protest at the Court.[3] *See CW Gov't Travel, Inc. v. United States*, 61 Fed. Cl. 559, 569 (2004) ("Had Congress wanted to set a statute of limitations on bid protest actions, it would have done so.").  By subjecting USPS to the Court's jurisdiction, while exempting it from GAO's, Congress provided the USPS greater discretion in how to craft its post-award procedures because neither the USPS, nor a disappointed offeror, need concern themselves with GAO's strict timeliness

---

[2] GAO's regulations permit a disappointed offeror to file a post-award protest at GAO after it has filed an initial agency protest, so long as the protest is filed at GAO within 10 days after the protester becomes aware of "initial adverse agency action."  4 C.F.R. § 21(2)(a)(3).  These regulations would not allow a protester to participate in the two-step exhaustion process at issue here because GAO's regulations would require the disappointed offeror to file a protest at GAO within 10 days after receiving the contracting officer's response (i.e., the "initial adverse agency action").  *Id.*  Thus, the deadline to file a protest at GAO would have passed by the time an offeror received a final decision from the SDR Official.  *Id.*

[3] This is not to say that there are no temporal limitations on a disappointed offer's ability to file a bid protest at the Court.  If the offeror unreasonably delays filing its protest to the detriment of the Government and/or awardee, this Court may dismiss the protest under the doctrine of laches. *See Nat'l Telecomm., Inc. v. United States*, 123 Fed. Cl. 595, 603 (2015) (dismissing protest after finding that protester unreasonably delayed filing the protest to the economic prejudice of the Government and awardee).

requirements. A disappointed offeror can raise its complaints with the USPS through its short disagreement process, and then still have the option to file a protest at the Court if it cannot resolve the dispute with USPS.

In short, although Congress did not *expressly* authorize USPS to promulgate an exhaustion requirement, the flexibility Congress provided to USPS, especially in the area of procurement, evidences an intent to allow the USPS to impose limited requirements on offerors. These requirements allow the USPS to address potential procurement issues raised by a disappointed offeror over a short period of time (approximately 60 days). If that offeror is still not satisfied, it may then proceed to the Court, which can then render a decision based on a complete and final record. *See Palladian Partners, Inc. v. United States*, 783 F.3d 1243 (Fed. Cir. 2015).

**B.** **The Federal Circuit's Holding in *Palladian Partners* Requires the Court To Dismiss Workhorse's Complaint**

If the Court finds that the USPS's exhaustion requirements are valid, then under the Federal Circuit's decision *Palladian Partners, Inc. v. United States*, 783 F.3d 1243 (Fed. Cir. 2015) there can be only one outcome to this case: the complete dismissal of Workhorse's Complaint. In *Palladian Partners*, the Federal Circuit held that the Court of Federal Claims was required to dismiss plaintiff's protest because plaintiff had not exhausted the Small Business Administration's ("SBA") mandatory administrative remedies before pursuing its protest at the Court of Federal Claims. 783 F.3d at 1258. As in *Palladian Partners*, the USPS has promulgated valid mandatory exhaustion requirements that Workhorse declined to follow before filing this protest. Accordingly, *Palladian Partners* compels the complete dismissal, with prejudice, of Workhorse's Complaint. *Id.*

7

Workhorse attempts to get around this controlling Federal Circuit decision by arguing that *Palladian Partners* is a size protest, and that "[n]othing in the decision indicates that the court analyzed the issue of exhaustion within the distinct category of bid protests." Dkt. No. 38 at 13. Workhorse is wrong.

*Palladian Partners* is unquestionably a bid protest. The Federal Circuit states at the very outset of the opinion that "[t]his case involves a pre-award bid protest." *Palladian Partners*, 783 F.3d at 1246. Moreover, the protester in *Palladian* was not seeking a size determination or directly challenging a decision by the SBA, but rather sought "declaratory and injunctive relief to enjoin [the National Institute on Drug Abuse] from accepting and evaluating proposals under the new [NAICS] code, which rendered [protester] ineligible to compete." *Id.* The Federal Circuit also found that the protest was governed by the Tucker Act, which concerns bid protests, not size protests. *Id.* at 1254 (holding that "OHA's NAICS code determination and the contracting officer's amendment to the solicitation are actions 'in connection with a proposed procurement.'"). Finally, the Federal Circuit explained that the government had argued that the protester "failed to properly exhaust its administrative remedies before filing ***its pre-award bid protest*** with the Court of Federal Claims and that this failure requires dismissal." *Id.* (emphasis added). The Federal Circuit agreed with the government, holding that the protester failed to exhaust mandatory administrative remedies, and that "this failure requires dismissal of [protester's] protest."[4] *Id.* at 1252, 1258.

---

[4] Workhorse also suggests that SBA's exhaustion requirements were valid because Congress authorized the SBA to establish small business size standards. Dkt. No. 38 at 13-14. But Workhorse fails to mention that no statutory authority expressly authorizes the SBA to issue exhaustion requirements. Instead, SBA's authority to issue such jurisdictional requirements, like the USPS's authority, comes from the broad grant of authority that Congress gave to the SBA. *See Palladian Partners*, 783 F.3d at 1247.

Workhorse cites another Federal Circuit decision, *Harmonica Holdings Group, LLC v. United States*, 999 F.3d 1397 (Fed. Cir. 2021) in an effort to support its claim that administrative exhaustion requirements apply to size protests, but not to bid protests.  Dkt. No. 38 at 13.  But this is not what *Harmonica* holds.  The Federal Circuit distinguished size protests from bid protests in *Harmonica* because the exhaustion requirement at issue – the requirement to file a size determination request with the SBA before seeking judicial review – only applied to size protests.  999 F.3d at 1403.  The Federal Circuit then found that the protester had not challenged the awardee's size, but rather the contracting officer's failure to refer the awardee to the SBA.  *Id.*  The Federal Circuit concluded that protester's claim was not a size protest; therefore, SBA's size protest exhaustion requirements did not apply.  *Id.*  The holding in *Harmonica* does not, as Workhorse argues, exempt protesters from following valid exhaustion requirements before filing a bid protest at the Court as USPS requires here.  *Id.*

*Palladian Partners* stands for the straightforward notion that protesters must follow validly promulgated exhaustion requirements before filing a protest at the Court.  783 F.3d at 1261-62.  The USPS has such exhaustion requirements, which give the USPS a short period of time to resolve disputes with disappointed offerors before those offerors can go into Court.  39 C.F.R §§ 601.107-601.108.  Workhorse failed to follow these basic rules, depriving the USPS of the opportunity to address any mistakes.  Therefore, under *Palladian Partners*, this Court must, and should, dismiss Workhorse's Complaint in its entirety and with prejudice.  783 F.3d at 1258.

III.    **The USPS Appeal Procedures Are Mandatory, and the Narrowly Applied Futility Exception Does Not Apply Here**

Although there is ample authority for this Court to deem USPS's exhaustion requirement jurisdictional, there is no need for the Court to do so in order to dismiss Workhorse's Complaint for failing to exhaust USPS's disagreement process. This is because, as the Supreme Court has held, even non-jurisdictional pre-litigation requirements are "mandatory" if their language so states. *Fort Bend County, Texas v. Davis*, 139 S. Ct. 1843 (2019) (holding that a non-jurisdictional "pre-condition to suit" set forth in Title VII was "mandatory").[5] Workhorse cites no authority to the contrary, but rather, asserts that the equitable principle of futility should excuse its conduct. For the reasons set forth below, Workhorse is incorrect.

The futility exception to the administrative exhaustion doctrine does not apply to excuse Workhorse's failure to appeal to the SDR Official. This exception applies only in those rare circumstances where "enforcing the exhaustion requirement would mean that parties "would be 'required to go through obviously useless motions in order to preserve their rights.'" *Corus Staal BV v. United States*, 502 F.3d 1370, 1378 (Fed. Cir. 2007); *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1384 (Fed. Cir. 2008) (noting that the Federal Circuit applies the exception "narrowly"). Workhorse's participation in the USPS's administrative appeal process is not rendered futile merely because Workhorse assumed it would be unsuccessful. Workhorse was obligated to attempt to persuade the USPS to change its position by pursuing the appeal

_____

[5] Even if the Federal Circuit's *Palladian* decision is not interpreted as instructing that regulatory exhaustion requirements are jurisdictional, there can be no doubt that it stands for the proposition that such requirements are still mandatory. 783 F.3d at 1255 ("Where a regulation requires exhaustion, a party's failure to exhaust administrative remedies precludes judicial review of its claim.").

10

process.  Having failed to do so, Workhorse cannot rely on the futility exception to evade the administrative exhaustion requirement.

In *Corus*, a seminal case addressing the futility exception, the Federal Circuit rejected a futility argument similar to Workhorse's.  The plaintiff claimed that addressing an issue in a case brief to the Department of Commerce ("Commerce") would have been futile because plaintiff already presented those arguments to Commerce and received an adverse preliminary determination.  *Id.* at 1378.  The plaintiff maintained that the agency in the past had consistently taken a position contrary to plaintiff's legal arguments and therefore was unlikely to accept those arguments if plaintiff pressed them again in its case brief.  *Id.*  The Federal Circuit disagreed: "it is not obvious that the presentation of Corus's arguments to the agency would have been pointless[,]" and "Corus has provided nothing by way of affirmative justification for its failure to raise the . . . issue in its case brief."  *Id.* at 1380-81.  The court further reasoned that requiring plaintiff to set forth its arguments in a case brief before final determination has "potential value either by resulting in possible relief for Corus or at least providing the agency an opportunity to set forth its position in a manner that would facilitate judicial review."  *Id.* at 1380.

*Corus* mandates that parties exhaust administrative remedies where the issue involves exercise of agency discretion, such as in policy or fact-based questions where the agency could change its determination based on interested party arguments.  *Id.* at 1380 ("Even if it was unlikely that Commerce would adopt Corus's legal arguments . . . it was still possible that upon full airing, Commerce might have accepted Corus's factual showing . . . , thereby obviating the need for judicial review."); *see also Biofora v. United States*, 773 F.3d 1326, 1330 (Fed. Cir. 2014) (noting that futility exception applies "when the administrative agency has no discretion to grant the requested relief").  Agency discretion is the cornerstone of procurement decisions, and

thus precisely the context in which exhaustion is required. *See* Dkt. No. 38 at 21 ("USPS has discretion in procurement decisions[.]"); *Grumman Data Sys. Corp. v. Widnall*, 15 F.3d 1044, 1047 (Fed. Cir. 1994) (noting that "agencies are entrusted with a good deal of discretion in making procurement decisions").

The USPS exercised its discretion in this procurement decision, and Workhorse was obligated to operate within the regulatory framework by making an argument to the SDR Official regarding *how* it should exercise that discretion. The court in *Corus* noted that the agency was "not bound to adhere to the approach it employ[ed] if a sufficiently persuasive showing [wa]s made that the approach [wa]s flawed in general or in its application to a particular case." *Corus*, 502 F.3d at 1380. Here too, the USPS had authority to alter its initial decision depending on the arguments Workhorse might have presented. Workhorse, however, chose to skip the appeal procedure simply because it did not think it would prevail. That expectation is insufficient to satisfy the narrowly applied futility exception to the exhaustion requirement. "The mere fact that an adverse decision may have been likely does not excuse a party from a statutory or regulatory requirement that it exhaust administrative remedies." *Id.* at 1379. Indeed, the Federal Circuit has held that the futility exception "is a narrow one," and Workhorse has failed to demonstrate why it is entitled to take advantage of this limited exception. *Id.*

Workhorse's futility argument primarily relies on a misreading of *Itochu Bldg. Prods. v. United States*, 733 F.3d 1140 (Fed. Cir. 2019). Workhorse asserts that, when agency review involves two levels and a party has already presented its arguments to the agency during the first level of review and those arguments are rejected, the party has no obligation to engage in a second level of review. Dkt. No. 38 at 19-20. This interpretation misapplies Federal Circuit precedent. In *Itochu*, the plaintiff requested that Commerce partially revoke an antidumping-

12

duty order. *Itochu*, 733 F.3d at 1143. Before Commerce issued its preliminary determination, plaintiff submitted comments, met with Commerce officials, and provided legal authority to urge that the revocation be effective as of a specified date. *Id.* Commerce's ruling rejected plaintiff's proposed revocation date but invited interested parties to submit comments. *Id.* at 1148. Plaintiff did not submit comments and instead appealed to the Court of International Trade, which held that plaintiff failed to exhaust its remedies. *Id.* at 1143-44. Reversing that decision, the Federal Circuit ruled that exhaustion did not apply because there was "no reasonable prospect" that Commerce, based on its interpretation of the applicable statute, would have modified the effective date. *Id.* at 1146-48. Distinguishing the facts from *Corus*, the court noted that the agency's position was that "it had *no discretion* in the matter because it was constrained by statute to reject [plaintiff's] position." *Id.* at 1148 (emphasis added). Thus, there were no factual or legal arguments that could have affected the agency's position. *Id.* The court concluded that exhaustion was not required in these circumstances, which it noted were "likely rare ones." *Id.*

USPS has never suggested that it is *statutorily* barred from awarding the contract to Workhorse. Rather, the Contracting Officer's response to Workhorse's business disagreement raises factual, legal, and policy arguments in support of its award decision that would have been appropriate for Workhorse to respond to through an appeal to the SDR Official. Dkt. No. 38-1, at 7 (disagreeing with Workhorse's characterization of executive policy on environmental concerns and federal vehicles), 8 (disagreeing with Workhorse's understanding of the NEPA process), 10 (explaining why USPS's best value determination was rational and correct), at 11-12 (explaining why ████████████████ in Workhorse's proposal rendered it ███████ ████████, including ██████████ and ██████████). Unlike *Itochu*, USPS's position

was not grounded in a "perceived statutory mandate," but rather reflected an exercise of the agency's discretion after evaluating numerous factors relating to Workhorse's proposal as compared to those submitted by other offerors. *Itochu*, 733 F.3d at 1147.

Further, one of the purposes of the administrative exhaustion requirement is to narrow the issues before the court and "produce a useful record for subsequent judicial consideration." *Palladian Partners, Inc. v. United States*, 783 F.2d 1243, 1255 (Fed. Cir. 2015). In a twenty-five-page response to Workhorse's business disagreement, the USPS explained in detail why it disagreed with each of Workhorse's arguments and why Workhorse's proposal was ███████

███████████████. *See generally* Dkt. No. 38-1. Workhorse could and should have engaged with each of these arguments at the agency level. This could have narrowed the issues before this Court and would have allowed the USPS to issue a full and final administrative response, consistent with the regulatory process. Notably, Workhorse has not suggested that the appeal process would have been unduly burdensome or caused it prejudice – nor can it given that Workhorse waited nearly three months after receiving the Contracting Officer's response to file this protest.

Thus, the Court should find that Workhorse has failed to exhaust its administrative remedies because the futility exception does not apply.

## IV.    The USPS's Disagreement Process Does Not Violate the Appointments Clause

Workhorse claims that it can ignore the USPS's mandatory disagreement process because the process violates the Appointments Clause of the U.S. Constitution. Dkt. No. 38 at 23-24. As an initial matter, the Court need not reach the merits of this argument because even if Workhorse is correct (it is not), Workhorse still is not excused from satisfying USPS's exhaustion requirements. The Supreme Court in *United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021) was

clear that when an otherwise inferior officer has the authority to issue final, unreviewable decisions, the proper remedy is to make the decision reviewable by a principal officer (i.e., an officer appointed by the President and confirmed by the Senate). *See* 141 S. Ct. at 1986-87. In this case, if the Court concluded that Workhorse's argument had merit (it does not), then the appropriate remedy would be to issue an order declaring that the PMG or Board of Governors, all of whom are principal officers, may review any final decision issued by the SDR Official. *Id.*; *see also* 39 U.S.C. § 202(a)(1). In other words, Workhorse would only be entitled to a third level of review, not the elimination of USPS's exhaustion requirements. *Id.* Thus, regardless of whether the final disagreement decision is issued by the SDR Official, the PMG, or the Board of Governors, Workhorse still failed to complete the USPS's mandatory administrative review process because it failed to appeal the contracting officer's initial decision to the next level of USPS's disagreement process. *See* 39 C.F.R. § 601.108(h).

Workhorse's Appointments Clause challenge also fails on the merits because the SDR Official does not issue final decisions, and is otherwise an inferior officer who is sufficiently directed and supervised by the PMG, a principal officer. The Appointments Clause empowers Congress to "vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, §2. Congress delegated the authority to appoint inferior officers to the USPS Board of Governors[6],

---

[6] The Supreme Court has held that a group of individuals, like a commission or board, can qualify as "the Heads of Departments" for purposed of the Appointments Clause. *See Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 447, 513-14 (2010) ("As a constitutional matter, we see no reason why a multimember body may not be the 'Hea[d]' of a 'Departmen[t]' that it governs." (alterations in original)).

39 U.S.C. § 402, who in turn used that authority to appoint the SDR Official as an inferior officer to issue decisions in the USPS's disagreement process. 39 C.F.R. §§ 601.107(a)(5), 601.108(e).

Workhorse, citing *United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021), argues that the USPS disagreement process is invalid because the SDR Official can issue final and binding decisions that are not reviewable by a principal officer.[7] Dkt. No. 38 at 29-30. Workhorse's interpretation of *Arthrex* is flawed. In *Arthrex*, the Supreme Court upheld the longstanding principle, established in *Edmond v. United States*, 520 U.S. 651, 663 (1997), that an inferior officer has no power to render a final decision on behalf of the United States ***unless permitted to do so by other Executive officers***[,]" i.e., principal officers. *Arthrex*, 141 S. Ct. at 1980 (quoting *Edmond*, 520 U.S. at 665) (emphasis added)). Thus, an inferior officer may issue final decisions so long as the inferior officer is "'directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate.'" *United States v. Arthrex, Inc.*, 141 S. Ct. at 1980 (2021) (quoting *Edmond*, 520 U.S. at 663). The USPS's structure and regulations ensure that the SDR Official is directed and supervised "at some level" and, to the extent his decisions are final, they are only final because the PMG and Board of Governors allow them to be final. *Id.*

First, the SDR Official is "directed and supervised at some level" by a principal officer because the SDR Official (Robert D'Orso), reports to the Vice President of Supply Management

---

[7] The arguments in Workhorse's response are inconsistent. On the one hand, Workhorse argues that it would have been futile to engage in the second level of USPS's disagreement process because "the Postmaster General made it clear that Oshkosh would perform the contract." Dkt. No. 38 at 21. On the other hand, Workhorse argues that the SDR Official's decisions are binding and cannot be reviewed by the PMG. *Id.* at 24. If the PMG's position on the contract award makes Workhorse's participation in the disagreement process futile, then the PMG must exercise control over the SDR Official. This means there is no violation of the Appointments Clause.

(Mark Guilfoil), who reports to USPS's Chief Financial Officer (Joseph Corbett), who reports directly to the PMG. *See* Exhibit 1; *see also* USPS.com, Postal Leadership, https://about.usps.com/who/leadership/officers/cfo-evp.htm ("Joseph Corbett was named chief financial officer (CFO) and executive vice president of the United States Postal Service, in February 2009, reporting directly to the PMG."); Dkt. No. 38 at 4. Thus, if the SDR Official intended to issue a decision that the Postmaster disagreed with, the Postmaster, through the Chief Financial Officer and Vice President of Supply Management could remove or transfer the SDR Official. *Id.* This is important because the Supreme Court has made clear that "the power to remove officers . . . is a powerful tool of control" for purposes of a court's Appointments Clause analysis. *Edmond*, 520 U.S. at 664; *see also Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 447, 510 (2010) (holding that Board members are inferior officers because Commission "possess[es] power to remove Board members at will.").

Second, the SDR Official can only issue a decision in the USPS disagreement process because he is permitted to do so by the PMG and Board of Governors. *See Arthrex*, 141 S. Ct. at 1980. The SDR Official's authority comes from 39 C.F.R. § 601.108, a regulation promulgated by the USPS. 75 Fed. Reg. 1542 (Jan. 12, 2010) (codified at 39 C.F.R. pt. 601). As explained in *In re Grand Jury Investigation*, 315 F. Supp. 3d 602 (D.D.C. 2018), when an inferior officer's authority is rooted in regulation, principal officers retain their authority over the inferior officer because the regulation can be rescinded or revised:

> If the regulations ever prevented the Attorney General from countermanding a Special Counsel's action or firing a Special Counsel who disobeyed directives, the Attorney General could rescind the regulations immediately and direct or fire the Special Counsel as he wished. . . . That the Attorney General can reassert his authority over the Special Counsel at will shows that his authority was never genuinely restricted in the first place.

315 F. Supp. 3d at 628-29; *see also United States v. Concord Mgmt. & Consulting LLC*, 317 F. Supp. 3d 598, 615 (D.D.C. 2018) ("This ability to rescind or revise the regulations as needed means that the [inferior officer] is subject to the [principal officer's] plenary supervision."). This means that the SDR Official's decision is only "final and binding" to the extent the PMG or Board of Governors wish the decision to remain final and binding. *Id.* The regulations can be rescinded or modified at any time by the PMG, and the PMG retains plenary control of the entire procurement resolution process. 39 U.S.C. § 401(2); 39 C.F.R. § 601.107(a)(5) (designating a specific duty to the SDR Official). And, as the *Arthrex* remedy makes plain, *discretionary* authority over binding agency action by a principal is all that is required under the Appointments Clause. 141 S. Ct. at 1988.

In contrast, the legal authority at issue in *Arthrex* was a **<u>statute</u>** that prohibited the principal officer from reviewing a final written decision of the Patent Trial and Appeal Board, requiring any appeals to go to the Federal Circuit. *See* 141 S. Ct. at 1977; *see also* 35 U.S.C. § 141(c) (stating that the Board's decision may be appealed "only to the United States Court of Appeals for the Federal Circuit."). The distinction between a regulation and statute is critical. A regulation is a self-imposed restriction that the agency can rescind at any time. A statute cannot be rescinded, and effectively insulates an inferior officer from the supervision of principal officers. Here, the SDR Official's decisionmaking authority is based entirely on a USPS regulation, meaning that the USPS's principal officers retain "plenary supervision" over the SDR Official, and the decisions he issues. *Concord*, 317 F. Supp. 3d at 615. For this reason alone, there is no Appointments Clause violation.

Finally, although Workhorse leans on the term "final and binding" that appears in § 601.108, the mechanics of the USPS's disagreement process show that the SDR Official's

18

decisions are neither final nor binding. In this procurement, the Contracting Officer selected Oshkosh for award, which the PMG then approved. Dkt. No. 38-1 at 3 ("[T]he Contracting Officer made a best value determination, with Oshkosh undoubtedly providing the best value to the Postal Service for the NGDV Production contract. After obtaining final approval from the PMG on Feb. 23, 2021, the Postal Service awarded the NGDV production contract to Oshkosh"); *see also* 39 C.F.R. § 601.104. Workhorse then initiated the first level of USPS's dispute process, which originated with the contracting officer who made the initial award determination. 39 C.F.R. § 601.107. If Workhorse was dissatisfied with the contracting officer's resolution, § 601.108 grants the SDR Official, authority to review the procurement decision. Had Workhorse followed this process as required, the SDR Official would have had two choices. He could affirm the contracting officer's award, as approved by the PMG, or remand the decision to the contracting officer for re-review. § 601.108(e).

Thus, when the SDR Official affirms, he makes no binding decision, because the decision has already been made. § 601.108(g) (if affirmed, "the contracting officer's original contract award becomes the Postal Service's final contract award"). When the SDR Official remands, he also makes no "binding" decision, because the authority to remedy flaws is "directed" back to the contracting officer, whose new award decision must then be approved by the PMG. §§ 601.108(e), 601.104. Nothing in the USPS's regulations or governing statute prevent the contracting officer and PMG from disagreeing with the SDR Official, and reissuing the same award. Moreover, there is nothing preventing the PMG from removing or reassigning the SDR Official, if the Official continues to disagree with the contracting officer's and PMG's award decisions. *See* Exhibit 1; *see also* 39 C.F.R. § 222.1(a) (authorizing PMG "to authorize any employee or agent of the Service to exercise any function vested in the Postal Service"); *Barnard*

*v. Ashley*, 59 U.S. 43, 44-45 (1855) (holding that head of agency could review decisions of subordinates despite congressional silence on the matter).

In short, no violation of the Appointments Clause is possible here.  On one hand, the SDR Official could have ratified a decision already made by the PMG.  On the other, the SDR Official could have asked the contracting officer to review the matter again, in which case the PMG would have again actively engaged in the decisionmaking, and was free to reissue the same award.  §§ 601.108(e), 601.104.  At no point could the SDR Official unilaterally "bind the Executive Branch to exercise executive power," because the PMG retained plenary control of the decisionmaking and the very process by which any decisions were made.[8]  *Arthrex*, 141 S. Ct. at 1985-86.

## V.    CONCLUSION

For the reasons stated above, Oshkosh respectfully requests that the Court grant its Motion to Dismiss, and dismiss Workhorse's entire complaint with prejudice.

Dated: August 3, 2021

Respectfully submitted,

Of Counsel:
Justin A. Chiarodo
Stephanie M. Harden
Robyn N. Burrows
Michael J. Montalbano
BLANK ROME LLP

/s/ Scott Arnold
Scott Arnold
**BLANK ROME LLP**
1825 Eye Street, NW
Washington, D.C.  20006
T: (202) 420-4736
F: (202) 379-9274
E: Sarnold@blankrome.com
*Counsel for Oshkosh Defense, LLC*

---

[8] The United States argues that Workhorse forfeited its Appointments Clause challenge because it failed to raise it before the USPS.  Dkt. No. 42 at 15-18.  Oshkosh fully endorses the United States' position.  As explained in the United States' Reply, the same exhaustion principles that require Workhorse to exhaust its bid-protest claims with the USPS also apply to Workhorse's belated Appointments Clause challenge.  *Id.*  The Court should, therefore, find that Workhorse forfeited its Appointments Clause challenge, and, for that reason as well, reject it.

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of August, 2021, I caused a copy of the foregoing Oshkosh Defense, LLC's Reply in Support of its Motion to Dismiss Plaintiff's Complaint to be served via electronic service through the Courts ECF filing system on all parties of record.

/s/ Scott Arnold
Scott Arnold
**BLANK ROME LLP**
1825 Eye Street, NW
Washington, D.C.  20006
T: (202) 420-4736
F: (202) 379-9274
E: Sarnold@blankrome.com
*Counsel for Oshkosh Defense, LLC*

# USPS Leadership Team

Shading = Executive Leadership Team (11 Members)


**POSTMASTER AND CHIEF EXECUTIVE OFFICER**
Louis DeJoy

 **Chief Postal Inspector**
Gary Barksdale

 **VP Government Relations & Public Policy**
Peter Pastre

 **VP Corporate Affairs**
Judy de Torok

**VP Corporate Communications**
Jeffery Adams

  **Judicial Officer**
Alan Caramella

 **Deputy Postmaster General & Chief Human Resources Officer**
Douglas Tulino

 **Chief Retail & Delivery Officer & Exec. VP**
Kristin Seaver

 **Chief Logistics & Processing Operations Officer & Exec. VP**
Isaac Cronkhite

 **Chief Commerce & Business Solutions Officer & Exec. VP**
Jacqueline Krage Strako

  **Chief Technology Officer & Exec. VP**
Scott Bombaugh

**Chief Information Officer & Exec. VP**
Pritha Mehra

 **Chief Customer and Marketing Officer & Exec. VP**
Steven Monteith

 **Chief Financial Officer & Exec. VP**
Joseph Corbett

**General Counsel & Exec. VP**
Thomas Marshall

 **VP Human Resources**
Simon Storey

 **VP Delivery Operations**
Joshua Colin

 **VP Processing & Maintenance Operations**
Mike Barber

 **VP Facilities**
Tom Samra

 **VP Engineering Systems**
Linda Malone

 **VP Chief Information Security Officer**
Christopher Nielsen

 **VP Customer Experience**
Kelly Sigmon

 **SVP Finance & Strategy**
Luke Grossmann

 **VP Labor Relations**
Katherine Attridge

 **VP Retail & Post Office Operations**
Angela Curtis

 **VP Logistics**
Robert Cintron

  **VP Transportation Strategy**
Peter Routsolias

 **VP Enterprise Analytics**
Jeffrey Johnson

 **VP Technology Applications**
Marc McCrery

 **VP Marketing**
Sheila Holman

**VP Controller**
Cara Greene

 **VP Organization Development**
Jenny Utterback

 **VP Area Retail & Delivery Operations Atlantic**
Salvatore Vacca

 **VP Regional Processing Operations Eastern**
Dane Coleman

**VP Business Solutions**
(Vacant)

 **VP Innovative Business Technology**
Gary Reblin

  **VP Network & Compute Technology**
William Koetz

 **VP Sales**
Shavon Keys

**VP Supply Management**
Mark Guilfoil

  **VP Area Retail & Delivery Operations Southern**
Timothy Costello

 **VP Regional Processing Operations Western**
Larry Munoz

  **VP Business Development**
(Vacant)

 **VP Product Solutions**
Thomas Foti

**VP Pricing & Costing**
Sharon Owens

 **VP Area Retail & Delivery Operations Central**
Elvin Mercado

 **VP Marketing** Sheila Holman

 **VP Innovative Business Technology** Gary Reblin

 **VP Area Retail & Delivery Operations WestPac**
Eduardo Ruiz



**UNITED STATES POSTAL SERVICE ®**